DENNIS LYNN ET AL. *v.* HAYBUSTER
MANUFACTURING, INC.
(14665)

PETERS, C. J., CALLAHAN, BORDEN, KATZ and PALMER, Js.

Argued April 27—decision released July 6, 1993

*Erin M. Kallaugher,* with whom was *Mark B. Seiger,* for the appellant (defendant).

*Vincent M. DeAngelo,* with whom was *Michael L. McDonnell,* for the appellees (plaintiffs).

KATZ, J. The sole issue certified[1] to this court is whether, in an action brought pursuant to the Product Liability Act (act); General Statutes § 52-572m et

---

[1] We granted the United States District Court's request for certification pursuant to General Statutes § 51-199a and Practice Book § 4168 to determine the following issue: "[W]hether a loss of consortium claim by the spouse of an injured person is barred in an action brought pursuant to the Product Liability Act, General Statutes § 52-572m et seq."

seq.;[2] a claim for loss of consortium by the spouse of an injured party is barred. We conclude that it is not.

[2] General Statutes § 52-572m provides: "PRODUCT LIABILITY ACTIONS. DEFINITIONS. As used in this section and sections 52-240a, 52-240b, 52-572n to 52-572r, inclusive, and 52-577a:

"(a) 'Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term 'product seller' also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

"(b) 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or non-disclosure, whether negligent or innocent.

"(c) 'Claimant' means a person asserting a product liability claim for damages incurred by the claimant or one for whom the claimant is acting in a representative capacity.

"(d) 'Harm' includes damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, 'harm' does not include commercial loss.

"(e) 'Manufacturer' includes product sellers who design, assemble, fabricate, construct, process, package or otherwise prepare a product or component part of a product prior to its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer."

General Statutes § 52-572n provides: "PRODUCT LIABILITY CLAIMS. (a) A product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product.

"(b) A claim may be asserted successfully under said sections notwithstanding the claimant did not buy the product from or enter into any contractual relationship with the product seller.

"(c) As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code."

General Statutes § 52-572o provides: "COMPARATIVE RESPONSIBILITY. AWARD OF DAMAGES. ACTION FOR CONTRIBUTION. (a) In any claim under

The record certified by the District Court discloses the following facts. On January 30, 1991, the named plaintiff, Dennis Lynn, allegedly sustained work related injuries while demonstrating an industrial grinder, the

sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.

"(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.

"(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party.

"(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.

"(e) If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of the claimant against him and commenced the action for contribution within one year after payment, or (2) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and brought an action for contribution."

General Statutes § 52-572p provides: "LIMITATION OF LIABILITY OF PRODUCT SELLER. (a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third party unless: (1) The alteration or modification was in accordance with the instructions or specifications of the product seller; (2) the alteration or modification was made with the consent of the product seller; or (3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller.

"(b) For the purposes of this section, alteration or modification includes changes in the design, formula, function or use of the product from that

Haybuster Model I.G.10, that had been manufactured by the defendant, Haybuster Manufacturing, Inc. As a result of the accident, Dennis Lynn and his wife,

originally designed, tested or intended by the product seller."

General Statutes § 52-572q provides: "LIABILITY OF PRODUCT SELLER DUE TO LACK OF ADEQUATE WARNINGS OR INSTRUCTIONS. (a) A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided.

"(b) In determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions.

"(c) In claims based on this section, the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.

"(d) A product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or recommend precautions against the potential harm."

General Statutes § 52-572r provides: "PRODUCT LIABILITY CLAIMS AGAINST THIRD PARTIES. (a) Notwithstanding any provision of the general statutes to the contrary, in any product liability claim against a third party this section shall govern the rights of the employee, or in the event of death, his dependents or representative, the employer or insurance carrier and the third party.

"(b) The plaintiff, upon verdict or settlement against a third party resulting from a product liability claim shall receive the amount of the verdict or settlement reduced by his attorney's fees and costs, and further reduced by an amount equal to the amount paid as compensation, including medical expenses, under the provisions of chapter 568 and an amount equal to the present worth of any probable future payments to which he has become entitled by award on account of such injury.

"(c) Neither an employer nor, in the event the employer is insured against liability under chapter 568, the insurer of such employer, shall have any lien upon any judgment received in any product liability claim, or any right of subrogation if the claim against the third party is a product liability claim.

"(d) In any product liability claim for personal injury or death arising out of and in the course of employment subject to the provisions of sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, and 52-577a, brought

Theresa Lynn, the plaintiff in this appeal (plaintiff),[3] filed an eight count complaint in the Superior Court for the judicial district of Middlesex. Upon motion by the defendant, the case was removed to the United States District Court for the District of Connecticut. The plaintiffs thereafter filed an amended complaint in two counts. The first count was brought on behalf of Dennis Lynn pursuant to the act. The second count alleged a loss of consortium by Theresa Lynn. The defendant subsequently moved to dismiss the second count of the amended complaint challenging the plaintiff's right to bring a loss of consortium claim.[4] The United States District Court for the District of Connecticut, *Covello, J.,* thereafter certified the issue to us.

The defendant maintains that the exclusivity provision of the act bars the plaintiff's claim for loss of consortium.[5] The defendant recognizes that at common law the plaintiff's claim for loss of consortium would have been permitted as derivative of her injured spouse's underlying claim. See *Izzo* v. *Colonial Penn Ins. Co.,* 203 Conn. 305, 312, 524 A.2d 641 (1987); *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 494, 408 A.2d 260 (1979). The defendant contends, however, that the language of General Statutes § 52-572n (a), which provides that "[a] product liability claim . . . shall be in lieu

---

against any third party, such third party may not maintain any action for indemnity against any person immune from liability.

"(e) The provisions of this section shall not apply to product liability claims in which the claimant's employer is the state of Connecticut, any political subdivision thereof, or any district or authority created by law providing governmental functions.

"(f) If any subsection of this section is adjudicated to be unconstitutional, the entire section shall be void."

[3] Following our acceptance of the certified issue, the parties agreed that the defendant would proceed as the appellant and the plaintiff Theresa Lynn would be the appellee.

[4] The defendant also moved to dismiss those portions of the first count that alleged a claim of recklessness.

[5] See footnote 2 for the text of General Statutes § 52-572n.

of all other claims against product sellers . . ." abolished Dennis Lynn's right to claim common law negligence and the plaintiff's right to claim loss of consortium. Relying on cases[6] wherein this court held that certain "exclusive" statutory schemes did not provide a right to claim a loss of consortium, the defendant argues that this derivative and dependent action is similarly prohibited by the act. We disagree because we conclude that prior to the enactment of the act the plaintiff could have brought, pursuant to the common law, a claim for loss of consortium for the negligent act of a third party, and because the act does not explicitly bar such action. We further conclude that "claim" as defined in the act continues to include a spouse asserting a derivative claim for loss of consortium.

Our analysis begins with several familiar principles.[7] Article first, § 10 of the Connecticut constitution protects "incorporated common law or statutory rights from abolition or significant limitation," if those rights existed in and prior to 1818. *Sharp* v. *Mitchell,* 209 Conn. 59, 64, 546 A.2d 846 (1988). Common law causes of action that emerged after 1818, however, are not afforded such protection and are susceptible to limita-

---

[6] *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 592 A.2d 912 (1991); *Ladd* v. *Douglas Trucking Co.,* 203 Conn. 187, 523 A.2d 1301 (1987); *Wesson* v. *Milford,* 5 Conn. App. 369, 498 A.2d 505, cert. denied, 197 Conn. 817, 500 A.2d 1337 (1985).

[7] The cases and treatises in which the derivative claim of loss of consortium has been defined, its origins traced, and its history developed, are legion, and we do not intend herein to reiterate or improve upon such discussions. See, e.g., *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 592 A.2d 912 (1991); *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 408 A.2d 260 (1979); *Marri* v. *Stamford Street R. Co.,* 84 Conn. 9, 78 A. 582 (1911); E. Holbrook, "The Change in the Meaning of Consortium," 22 Mich. L. Rev. 1 (1923); note, "Negligently Caused Loss of Consortium—A Case for Recognition as a Cause of Action in Connecticut," 2 Conn. L. Rev. 399, 400 (1969). We focus instead on the issue of whether a loss of consortium claim is precluded by General Statutes § 52-572m et seq.

tion and abrogation by the legislature. *Gentile* v. *Altermatt,* 169 Conn. 267, 283, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). Although a husband was empowered to claim a loss of consortium prior to 1818; *Marri* v. *Stamford Street R. Co.,* 84 Conn. 9, 14–17, 78 A. 582 (1911); the right of a wife to bring a loss of consortium claim was not recognized until well into the twentieth century. *Hopson* v. *St. Mary's Hospital,* supra, 487–95. We followed therein the growing majority of courts in recognizing a right of action for loss of consortium in either spouse, and held that a wife has a right to bring an action for loss of consortium arising from a personal injury to her husband caused by the negligence of a third person and claim, as elements of damage, loss of companionship, society, affection, sexual relations and moral support. Id., 496. Because the husband's right to bring a loss of consortium claim existed prior to 1818, the legislature was not free to eradicate it where the underlying claim of negligence was against a third party who was not a municipality. *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 199, 592 A.2d 912 (1991). The claim by a wife for loss of consortium, although not in existence prior to 1818, is now firmly rooted in our common law. *Izzo* v. *Colonial Penn Ins. Co.,* supra, and cases cited therein.

Interpreting a statute to impair an existing interest or to change radically existing law.is appropriate only if the language of the legislature plainly and unambiguously reflects such an intent. "[W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction." (Internal quotation marks omitted.) *Ahern* v. *New Haven,* 190 Conn. 77, 82, 459 A.2d 118 (1983). "In determining whether or not a statute abro-

gates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 (1937). Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed. *State* v. *Sanchez,* 204 Conn. 472, 479, 528 A.2d 573 (1987). We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated. "The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." 3 J. Sutherland, Statutory Construction (5th Ed. Singer 1992 Rev.) § 61.01, pp. 172–73.

In accordance with these principles, we first examine the language of the act to determine whether it clearly abrogates the common law right to loss of consortium. The legislature's intent is derived "not in what it meant to say, but in what it did say." *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 571, 512 A.2d 893 (1986). The act makes no explicit mention of whether a loss of consortium claim survives or is abrogated.[8] Consequently, there has been no expressed intent of the legislature "as found from the words employed" to eliminate a spouse's claim for loss of consortium in product liability cases. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785 (1957). Certainly, the legislature is capable of providing explicit limitations when that is its intent. See, e.g., General Statutes § 52-555d ("[n]o

[8] See footnote 2.

action with respect to any claim or cause of action for loss of consortium shall be brought by one spouse against an employer of the other spouse if such other spouse is entitled to receive, is receiving or has received [workers' compensation benefits]''). In the absence of similar explicit language, we will not presume that the legislature intended the act to operate in derogation of this common law cause of action for loss of consortium.

On the contrary, we conclude that the broad definition of "claimant" as provided under the act encompasses a spouse claiming a loss of consortium. General Statutes § 52-572m (c) provides that " '[c]laimant' means a person asserting a product liability claim for damages incurred by the claimant . . . ." A " '[p]roduct liability claim' includes all claims or actions brought for personal injury . . . ." General Statutes § 52-572m (b). This court determined in *Hopson* v. *St. Mary's Hospital,* supra, 493, that a claim for loss of consortium includes "personal and compensable, though not physical, injuries as a direct result of the defendant's negligence . . . ." Although "damages" is not defined in the act, we have held that damages includes a loss of consortium shown to arise from a personal injury to a spouse caused by the negligence of a third person. Id., 496. *Hopson* v. *St. Mary's Hospital,* supra, was argued on November 14, 1978, and the decision was released on January 23, 1979. The act; General Statutes § 52-572m et seq.; was effective on October 1, 1979. The House of Representatives approved the final version of the act on May 11, 1979, and the Senate approved the act on May 29, 1979. 22 H.R. Proc., Pt. 21, 1979 Sess., p. 7306; 22 S. Proc., Pt. 14, 1979 Sess., p. 4650. "Because the legislature is presumed to know the state of the law when it enacts a statute; *State* v. *Dabkowski,* 199 Conn. 193, 201, 506 A.2d 118 (1986); we can assume that, absent an affirm-

ative statement to the contrary, it did not intend to change the existing law . . . ." *In re Ralph M.*, 211 Conn. 289, 300, 559 A.2d 179 (1989). Accordingly, we conclude that a spouse asserting a derivative claim of loss of consortium falls within the general definition of "claimant" in the act.

Even if the language of the act were deemed to be unambiguous or opaque, its legislative history demonstrates no intent to abolish the common law right to loss of consortium for either spouse. An examination of the legislative history of the act supports the plaintiff's claim that the legislature was merely recasting an existing cause of action and was not creating a wholly new right for claimants harmed by a product. The intent of the legislature was to eliminate the complex pleading provided at common law: breach of warranty, strict liability and negligence. 22 S. Proc., Pt. 14, 1979 Sess., pp. 4637–38; 22 H.R. Proc., Pt. 20, 1979 Sess., pp. 7021–22. "Statements of legislators often provide strong indication of legislative intent." *State* v. *Golino,* 201 Conn. 435, 445, 518 A.2d 57 (1986). As Senator Salvatore C. DePiano explained, the act was intended to merge various theories into one cause of action rather than to abolish all prior existing rights.[9]

Finally, the defendant relies on other cases decided by this court in which we interpreted statutes that provided new and exclusive causes of action in derogation of the common law to preclude a loss of consortium

---

[9] The following exchange occurred before the Senate:

"[Senator Richard C. Bozzuto]: Senator DePiano, as I understand it, adoption of this statute will in effect, wipe out existing case law. Is there any advantage to that as opposed to adopting statutory language? Would you comment?

"[Senator Salvatore C. DePiano]: I wouldn't say we would be abolishing all case law, what we're really abolishing is the various causes of actions that have been brought in cases which we normally would call products liability cases. For example, the theory of strict liability, warranty, negligence and contract. They would all be now merged into one cause of action which has been created by statute." 22 S. Proc., Pt. 14, 1979 Sess., p. 4639.

claim. *Sanzone* v. *Board of Police Commissioners,* supra; *Ladd* v. *Douglas Trucking Co.,* 203 Conn. 187, 523 A.2d 1301 (1987); *Wesson* v. *Milford,* 5 Conn. App. 369, 498 A.2d 505, cert. denied, 197 Conn. 817, 500 A.2d 1337 (1985). Because we conclude that the act does not create a new cause of action, these cases and the statutes interpreted therein are inapposite.

In *Sanzone* v. *Board of Police Commissioners,* supra, we held that General Statutes § 52-557n makes a defective highway claim under General Statutes § 13a-149 ("highway defect statute") a plaintiff's exclusive remedy against a municipality for damages resulting from a highway defect. "The availability of redress under § 13a-149 permits the legislature constitutionally to eliminate common law remedies, if any, that may have existed prior to 1818 and that continued to exist prior to the Tort Reform Act of 1986, for injuries arising out of highway defects." Id., 196–97. In addressing the derivative loss of consortium claim, we stated that although "[a]t common law, prior to 1818, a husband could bring an action on the case [in negligence] seeking damages for loss of consortium resulting from his wife's injury," neither the parties, nor this court had uncovered any negligence action prior to 1818 that sought a loss of consortium claim against a municipality. Id., 199. Even *Eldredge* v. *Pomfret,* 1 Root (Conn.) 270 (1791), and *Lewis* v. *Litchfield,* 2 Root (Conn.) 436 (1796), which contemplated a common law negligence action arising out of a highway defect in addition to the statutory remedy, did not suggest a derivative loss of consortium claim against the municipality. *Sanzone* v. *Board of Police Commissioners,* supra, 199. We declined to assume that a husband "whose wife was injured by a defective highway would have been able, prior to 1818, to seek damages for loss of consortium from the [municipality] responsible." Id. We did not, therefore, require that § 52-557n be interpreted to pro-

vide for a cause of action in negligence and the derivative action of loss of consortium in order to withstand constitutional challenge. Id., 199–200. We concluded that § 13a-149, the exclusive remedy, does not permit damages for loss of consortium, but allows recovery only by the injured "traveler." *Frechette* v. *New Haven*, 104 Conn. 83, 88, 132 A. 467 (1926). Reluctant to circumvent the general common law immunity of municipalities absent specific legislative authorization, we concluded that § 52-557n barred claims for loss of consortium. Because it rested on common law principles of municipal immunity, our holding in *Sanzone* does not illuminate the continued common law right to recover for loss of consortium against defendants not protected by this special immunity.

Equally of little precedential value to the defendant is *Ladd* v. *Douglas Trucking Co.*, supra, 191, wherein we upheld the right of a spouse to bring a claim for antemortem loss of consortium in a wrongful death action when it has been joined with the wrongful death action brought by the decedent's estate pursuant to General Statutes § 52-555. We reasoned that "[b]ecause the death of a victim does not terminate his claim for antemortem injuries, whether fatal or not,[10] it would be wholly incongruous for his death to result in wiping out the related claim of his spouse for the antemortem loss of consortium flowing from the same injuries." Id.[11] We held that "[a] claim for loss of antemortem consortium may be regarded as derivative of the portion of the claim of the deceased relating to the recovery of antemortem damages for the death that the estate is authorized by § 52-555 to pursue." Id., 195.

---

[10] If the injuries were not fatal, the victim's action survives his death. General Statutes § 52-599. If the injuries were fatal, an action for wrongful death allows the victim to recover damages suffered before death as well as after. General Statutes § 52-555.

[11] See also *Bauer* v. *Johns-Manville Corporation*, 599 F. Sup. 33, 36 (D. Conn. 1984) (claim for antemortem loss of consortium because of nonfatal injuries does not abate upon death of the victim).

In addressing the spouse's claim for postmortem loss of consortium, however, we concluded that there was neither a statutory nor a common law right to recover. Id., 196–97. The lack of a common law right of recovery for the wrongful death of a victim on the part of his estate or family proved fatal to the spouse's claim. Prior to the enactment of chapter 5, § 2 of the 1848 Public Acts, the predecessor of § 52-555, the victim's estate could not recover for damages resulting from his death. *Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 621–22, 45 A. 435 (1900). Such damages were deemed recoverable only pursuant to statute. The wrongful death statute; General Statutes § 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought. At common law, the death of the injured person, whether contemporaneous with the wrongful act or not, terminated liability of the wrongdoer because the right to enforce it ended with the death. See *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 668, 136 A.2d 918 (1957). Death and its direct consequences can constitute recoverable elements of damages only if, and to the extent that, they are made so by statute. *Foran* v. *Carangelo,* 153 Conn. 356, 359, 216 A.2d 638 (1966). Because it is in derogation of the common law, an action for wrongful death is limited to matters clearly within its scope. Unless the statute provided that death and its direct consequences were recoverable elements of damages, as it did in the case of the victim, a claim by the spouse for loss of consortium resulting from the victim's death was unavailable. *Ladd* v. *Douglas Trucking Co.,* supra, 196. In effect, there was no common law right from which a derivative action could stem. "A claim for loss of postmortem consortium, however, cannot be derivative of the decedent's claim for postmortem damages under [§ 52-555] because the statute itself provides the sole

authority for the recovery of *any* damages resulting from a death." (Emphasis in original.) Id., 195. *Ladd* stands for the proposition that if a statute creates a cause of action that did not exist at common law, such that it is the exclusive means by which damages resulting from a particular injury are recoverable, they are recoverable only to the extent that they have been specifically articulated.[12]

Our examination of these two cases demonstrates that the act, as a codification of common law, if it were

[12] It was in response to *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 523 A.2d 1301 (1987), that the legislature enacted Public Acts 1989, No. 89-148, now General Statutes § 52-555a, permitting loss of consortium claims in conjunction with wrongful death actions. Portions of the colloquy between various representatives illustrate that the legislature's reasons for limiting the loss of consortium statute to cases of wrongful death were in fact because we had already recognized the existence of a loss of consortium claim for injuries if the underlying action was based in common law.

"[Representative Jay B. Levin]: Thank you. Mr. Speaker, the file copy would have permitted an action for loss of consortium, which is basically the right for a person to sue for emotional and moral support and other damages, emotional non-economic damages suffered by a spouse, due to the injury or death of another, for either injury or death of that spouse. This amendment clarifies that that action will lie, the loss of consortium action, will be valid only in the occasion of the death of the spouse, that being because common law now recognizes an action for loss of consortium where there is an injury.

"Our State Supreme Court has found however that common law rule did not apply to a situation where there had been a wrongful death. This makes it clear that it is applicable to wrongful death. I would ask, move adoption of the amendment.

"[Representative Linda N. Emmons]: [W]hy are you taking the injuries part [out]?

"[Representative Jay B. Levin]: [T]he common law now permits an action for loss of consortium where there has been an injury short of death. This statute is intended to correct the situation that was pointed out by . . . our Supreme Court . . . in 1987, that would not apply the common law rule which had been accepted by our courts, to a wrongful death situation, which is a statutory action. . . .

"[Representative Linda N. Emmons]: [B]ecause we have now put this into the statutes relative to death, that would in no way affect common law?"

"[Representative Jay B. Levin]: That is correct. . . . What is correct is that this would not override the common law. This would merely modify

to deal expressly with claims for loss of consortium would require a statutory provision specifically excluding such claims in derogation of common law. By contrast, these two other statutory actions would require statutory amendments expressly permitting claims of loss of consortium, in derogation of the common law.

The defendant also relies on *Wesson* v. *Milford,* supra, as an example of a statutory action that precludes recovery for a loss of consortium. Once again, this reliance is misplaced. *Wesson* v. *Milford,* supra, concerned a loss of consortium claim in a workers' compensation case. The purpose of the Workers' Compensation Act; General Statutes § 31-275 et seq.; is to provide compensation for injuries arising out of and in the course of employment, regardless of fault. *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968). Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979). "In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985). The Workers' Compensation Act is a statutory scheme in derogation of common law, and must be "limited to matters clearly brought within its scope." *Willoughby* v. *New Haven,* supra, 454.

the situation with respect to death actions." 32 H.R. Proc., Pt. 14, 1989 Sess., pp. 4862–67.

Because the wrongful death statute is a statute in derogation of common law, creating a liability that theretofore did not exist, and contained no provisions or language that could be interpreted to include a loss of consortium claim, the legislature had to enact General Statutes § 52-555a to include specifically the loss of consortium provision. The legislature chose to limit the bill solely to a wrongful death action under § 52-555 and leave for another day other statutory actions not recognized at common law for which a claim for loss of consortium could not be made in the absence of a specific statutory provision.

General Statutes § 31-284 (a) provides in relevant part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . . *All rights and claims between employer and employees, or any representatives or dependents of such employees . . . are abolished* other than rights and claims given by this chapter . . . ." (Emphasis added.) The Appellate Court held that this language is "clear and unambiguous in its exclusion or abolition of claims and rights between employer and employees . . . [and] dependents . . . arising out of personal injury or death sustained in the course of employment." *Wesson* v. *Milford,* supra, 373. In its decision sustaining the trial court's judgment granting a motion to strike the plaintiff's complaint for loss of consortium damages arising from her spouse's injuries, for which he had already received workers' compensation benefits, the Appellate Court relied upon the clear and unambiguous language of § 31-284 (a) to conclude that "[s]ince the injury to the spouse of the employee is derivative in nature, it is barred by the sweeping language describing the employer's immunity." Id., 375. Because the injured party no longer had his common law cause of action, the spouse no longer had her derivative claim.[13] The express statutory prohibition contained in § 31-284 (a) compelled that conclusion, and, therefore, precluded both causes of action. Unlike the Workers' Compensation Act, the Product Liability Act contains no sweeping language, such as "[a]ll

---

[13] To be consistent, the legislature also chose to enact General Statutes § 52-555d, which provides: "No action with respect to any claim or cause of action for loss of consortium shall be brought by one spouse against an employer of the other spouse if such other spouse is entitled to receive, is receiving or has received [workers' compensation benefits]." Had the legislature wanted to prohibit loss of consortium claims in conjunction with a product liability claim, it could have enacted a statute similar to § 52-555d. In its absence, we will not limit the scope of the act beyond its evident intent.

rights and claims . . . are abolished other than rights and claims given by this chapter . . . ." There is, therefore, no such statutory prohibition.

The certified question is answered: "No; a loss of consortium claim by the spouse of an injured person is not barred in an action brought pursuant to the Product Liability Act, General Statutes § 52-572m et seq."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.