[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 101)
The plaintiff, Doris Rosenthal, as executrix of the estate of her deceased husband Leonard Rosenthal, filed a three-count complaint against the defendants, AMF Bowling Center, Inc. (AMF) and Thomas Holota. The plaintiff alleges that on or about November 23, 1997 she and the deceased were the passenger and driver, respectively, of a motor vehicle which was parked on the shoulder on Interstate 95. The vehicle occupied by the deceased and the plaintiff was rear-ended by a van being driven by Ronald Kelly, allegedly due to Kelly's intoxication, causing the deceased and the plaintiff substantial injury. The plaintiff further alleges that Kelly was sold alcoholic beverages by the defendants AMF and Holota as AMF's permittee, and that the deceased's injuries and death were caused by the defendants' sale of intoxicants to Kelly. In count one, the plaintiff seeks to recover damages pursuant to General Statutes § 30-102, the dram shop act, on behalf of the deceased. In count two, the plaintiff alleges loss of consortium. In count three, the plaintiff alleges a claim pursuant to § 30-102 on her own behalf.
The defendants filed a motion to strike count two on the ground that no cause of action is recognized for a loss of consortium claim which is derived from a dram shop claim, and count three on the ground that the plaintiff failed to give the required notice that she intended to commence a dram shop claim against the defendants. The plaintiff filed a memorandum in opposition to the motion to strike, and the matter was heard by CT Page 10048 the court on April 19, 1999.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . [The court] must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
A prerequisite to maintaining an action pursuant to §30-102 is the giving of notice within sixty days of the occurrence of injury to person or property. It is admitted and the court finds that no such notice was given here with regard to Doris Rosenthal's claim. Accordingly, the motion to strike count three of the complaint is granted.
With regard to count two, the defendants rely upon Marks v.Donascimento, Superior Court, judicial district of Danbury, Docket No. 311425 (February 17, 1993, Fuller, J.) (8 C.S.C.R. 324), in which the court held that the dram shop statute did not provide for a derivative loss of consortium claim.[1] The plaintiff argues that § 30-102 does not prohibit the raising of a loss of consortium claim in the context of a dram shop action.
The Supreme Court examined whether a loss of consortium claim could be maintained in the context of a products liability case in Lynn v. Haybuster Manufacturing, Inc., 226 Conn. 282, 289,627 A.2d 1288 (1993). The Court's examination began with the principle that article first, § 10, of the constitution of Connecticut protects incorporated common law or statutory rights from abolition or significant limitation if those rights existed in or prior to 1818; common law causes of action emerging after 1818 are not afforded such protection and are susceptible to limitation by abrogation by the legislature. Id., 288-89. The court found that claims for loss of consortium existed at or before 1818, and therefore are protected from abolition or significant limitation.
"Interpreting a statute to impair an existing interest or to change radically existing law is appropriate only if the language CT Page 10049 of the legislature plainly and unambiguously reflects such an intent. [W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." Id., 289-90. "Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." Id., 290. "We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated." Id.
In accordance with these principles, the court in Lynn held that a reviewing court should first examine the language of the act to determine whether it clearly abrogates the common law right to loss of consortium, noting that the legislature's intent is derived not in what it meant to say, but in what it did say. Id. The court found that the products liability act makes no explicit mention of whether a loss of consortium claim survives or is abrogated. Consequently, there was no expressed intent of the legislature to eliminate a spouse's claim for loss of consortium in product liability cases. Id. "Certainly, the legislature is capable of providing explicit limitations when that is its intent." Id. "In the absence of . . . explicit language, we will not presume that the legislature intended the act to operate in derogation of this common law cause of action for loss of consortium." Id., 291
The court then compared loss of consortium claims brought in the context of products liability actions with those brought in the context of defective highway cases. In addressing the derivative loss of consortium claim, the court noted that it had found no negligence action brought against a municipality for a defective highway prior to 1818 which also alleged a loss of consortium claim. Id., 293, citing Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 199, 592 A.2d 912 (1991). The court also noted the special problems existing in defective highway cases due to the issue of state and municipal immunity. "Reluctant to circumvent the general common law immunity of CT Page 10050 municipalities absent specific legislative authorization, we concluded that § 52-557n barred claims for loss of consortium. Because it rested on common law principles of municipal immunity, our holding in Sanzone does not illuminate the continued common law right to recover for loss of consortium against defendants not protected by this special immunity." Lynnv. Haybuster Mfg., Inc., supra, 226 Conn. 294.
Finally, the court examined loss of consortium claims brought in the context of a wrongful death action. The court held that" [a] claim for loss of antemortem consortium may be regarded as derivative of the portion of the claim of the deceased relating to the recovery of antemortem damages for the death that the estate is authorized by § 52-555 to pursue." Id., 294. "In addressing the spouse's claim for postmortem loss of consortium, however, [the court] concluded that there was neither a statutory nor a common law right to recover. . . ." Id., 295. "A claim for loss of postmortem consortium . . . cannot be derivative of the decedent's claim for postmortem damages under [§ 52-555] because the statute itself provides the sole authority for the recovery ofany damages resulting from a death." Id. Thus, because General Statutes § 52-555 created the exclusive means by which damages are recoverable, they are recoverable only to the extent that they have been specifically articulated.[2] Id.
A claim for loss of consortium existed at common law before 1818, and therefore must be specifically abrogated by a later-enacted statute. As a matter of statutory construction, "no statute is to be construed as altering the common law, farther than its words import [and . . . a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal quotation marks omitted.) Carl J.Herzoa Foundation, Inc. v. University of Bridgeport, 243 Conn. 1,5, 699 A.2d 995 (1997).
The dram shop statute, however, does not limit a plaintiff's available causes of action. "The legislature enacted §30-102, the Dram Shop Act, in 1933, thereby creating a cause of action against liquor sellers for victims injured by intoxicated persons to whom the liquor sellers have served alcohol. The common law did not allow such a cause of action because the intoxicated person's consumption of alcohol was held to constitute a break in the causal chain between the liquor seller and the victim . . . In enacting § 30-102 and abrogating the common law bar to a cause of action, the legislature thus allowed CT Page 10051 some measure of recovery to victims of acts of intoxicated persons." Kelly v. Fiaueiredo, 223 Conn. 31, 38, 610 A.2d 1296
(1992).
Thus, at common law, purveyors of alcohol could not be held liable for negligent service of alcohol. The dram shop act now limits the immunity for negligent actions enjoyed by purveyors of alcohol by allowing for a statutory cause of action by persons injured due to the acts of third person consumers of alcohol. The dram shop act does not contain any indication that its purpose was to replace all common law causes of action, including the well-established common law cause of action for spousal consortium. Indeed, the Supreme Court has interpreted the dram shop act as allowing a plaintiff to assert a common law claim based upon reckless or intentional conduct against a purveyor of alcohol. Kowal v. Hofher, 181 Conn. 355, 362, 436 A.2d 1
(1980).[3]
This court finds that the spouse of a party injured due to an alleged violation of § 30-102 may maintain a cause of action for loss of consortium in the same suit, as the legislature has not clearly articulated its intention to disallow common law spousal consortium claims in the context of a dram shop action.
Accordingly, the defendants' motion to strike count two is denied; the motion to strike count three is granted.
SKOLNICK, J.