[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO STRIKE COUNTS 3, 14, 20, 21, 22, 23 AND 24 OF PLAINTIFFS' AMENDED COMPLAINT
On July 27, 2000, the plaintiffs, Patrice Ward, in her individual capacity and as administratrix of the estate of Raegan McBride, filed an amended complaint against the defendants, Kathy Greene ("Greene"), Village for Families and Children, Inc. ("Village"), State of Connecticut Department of Public Health ("DPH"), and Stephen Harriman, in his capacity as the Commissioner of the State of Connecticut Department of Public Health ("Harriman"), for damages allegedly sustained by them as the direct result of the actions or conduct of these defendants. All of the defendants have filed motions to strike, challenging a total of twenty-two of the thirty-three counts comprising the amended complaint. The court heard oral argument on the defendants' motions to strike on November 27, 2000, at which time counts eleven and twenty-nine were stricken by agreement.
The court elects to issue multiple memoranda, dealing with the motions to strike in groups which have some relationship with each other in terms of the legal issues involved. CT Page 3227
This lawsuit arises out of the tragic death of Raegan McBride, the two-year old daughter of Patrice Ward, who attended a day care facility operated by Greene. According to the allegations of the amended complaint, which allegations are taken as true for purposes of these motions to strike, Ms. Ward became aware of Greene's operation through a family friend and called the DPH "hotline" to inquire if any complaints had been made against Greene as a day care provider. After receiving a satisfactory report, Ms. Ward sent her daughter to Greene's home in January of 1997. On or about February 24, 1997, Greene fatally injured Raegan McBride.
Subsequently, Ms. Ward learned that Greene had abused several children placed in her care, beginning in 1983 and continuing through the time of Raegan McBride's death. The Village, a private child placement agency contracted by the State of Connecticut to provide care to children in the greater Hartford area, placed its first day care child in Greene's home in September of 1983. After the Village received a report of abuse by Greene later that month, Greene closed her facility; The Village did not inform the State of Connecticut Department of Children and Families ("DCF") of the alleged abuse at that time.
In April of 1990, Greene contracted with the Village to become a specialized foster parent. The amended complaint alleges several additional incidents of abuse by Greene in connection with children placed in her foster care through the Village. As alleged in the complaint, the Village did not notify DCF of any of these incidents of abuse because of the possible negative impact on the Village's business.
In 1991, Greene applied to DPH for a license to operate a family day care home. The application was granted by DPH without verification of background information from the Village. Her day care license was subsequently renewed by DPH in 1992, 1993, 1994, 1995 and 1996.
In January of 1992, Greene reapplied with the Village to be a day care provider, which application was approved. Even though the Village received some reports of abuse of children it placed with Greene for day care, the Village failed to notify DCF of the incidents because of the possible negative impact on the Village's business.
There is no claim that the Village placed Raegan McBride in Greene's home for day care or foster care. What is claimed is that the Village failed to report Greene's history of mistreatment of children to DCF. It is alleged that the Village, by failing to report these incidents of abuse, caused DPH "to lack information regarding the conditions at Ms. Greene's or to be able to investigate further such conditions so that it could properly inform plaintiff through its hotline of any complaints." CT Page 3228
With respect to DPH, it is alleged that DPH failed to cooperate with DCF and other state agencies in investigating and reporting incidents involving Greene. Further, it is alleged that DPH failed to carry out proper inquiry and investigation of Greene's day care license application and subsequent renewals.
This memorandum of decision addresses only the challenges to count three and those counts of the amended complaint alleging private causes of action arising from claimed violations of various provisions of the Connecticut General Statutes. Count three is a negligence count against Greene. Count fourteen alleges the Village violated the provisions of section 17a-101 of the General Statutes. Counts twenty, twenty-one, twenty-two, twenty-three and twenty-four, all directed against DPH, claim a violation of the provisions of sections 17a-106, 19a-82, 19a-83, 19a-87b
and 19a-77 of the General Statutes, respectively.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). The role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [plaintiffs] have stated a legally sufficient cause of action." Dodd v. Middlesex MutualAssurance Company, 242 Conn. 375, 378, 698 A.2d 859 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Faulkner, supra, 580. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992).
COUNT THREE
Count three, captioned "Negligence", alleges that Greene owed a duty of care to plaintiffs, that Greene breached that duty, and that the breach of that duty was a proximate cause of Raegan McBride's death and her mother's severe emotional distress. Greene contends the negligence count is barred by Connecticut's wrongful death statute.
Section 52-555 of the General Statutes provides that "[i]n any action surviving to or brought by an executor or administrator for injuries resulting in death, . . . such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses. . . ."
CT Page 3229 Prior to the enactment of chapter 52 of the 1843 Public Acts, the predecessor of 52-555, the victim's estate could not recover for damages resulting from his death. Broughel v. Southern New England Telephone Co., 72 Conn. 617, 621-22, 45 A. 435 (1900). Such damages were deemed recoverable only pursuant to statute. The wrongful death statute: General Statutes 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought. At common law, the death of the injured person, whether contemporaneous with the wrongful act or not, terminated liability of the wrongdoer because the right to enforce it ended with the death. See Floyd v. Fruit Industries, Inc., 144 Conn. 659, 668, 136 A.2d 918 (1957). Death and its direct consequences can constitute recoverable elements of damages only if, and to the extent that, they are made so by statute. Foran v. Carangelo, 153 Conn. 356, 359, 216 A.2d 638 (1966). Because it is in derogation of the common law. an action for wrongful death is limited to matters clearly within its scope. (Emphasis added.)
Lynn v. Haybuster Manufacturing, Inc., 226 Conn. 282, 295, 627 A.2d 1288
(1993).
Count four of the plaintiffs' amended complaint is a claim brought against Greene pursuant to section 52-555, Connecticut's wrongful death statute. That statute is the exclusive remedy for Raegan McBride's death. Patrice Ward's claim in count three for emotional distress as a direct consequence of Raegan McBride's death is a derivative claim and, therefore, not an injury for which damages can be recovered under the statute. For these reasons, count three is stricken in its entirety.
COUNT FOURTEEN
Count fourteen, captioned "Violations of Conn. Gen. Stat. Section17a-101", alleges that the Village failed to report incidents of abuse to DCF as required by the referenced statute, thereby injuring the plaintiff in her individual capacity.[1] The Village contends count fourteen must be stricken as legally insufficient because section 17a-101 does not create a private right of action.
Section 17a-101 provides, in relevant part, as follows:
 Sec. 17a-101. (Formerly Sec. 17-38a). Protection ofCT Page 3230 children from abuse. Mandated reporters. Training program for identification and reporting of child abuse and neglect. (a) The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family.
The Connecticut Supreme Court, in Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 249, 680 A.2d 127 (1996), sets forth the factors to be considered in determining whether a particular statute confers a private cause of action. "First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Citations omitted; internal quotation marks omitted.)
The court finds that the plaintiff mother, in her individual capacity, is not one of the class for w hose benefit the statute was enacted. This provision clearly indicates that the public policy behind its enactment is the protection of children. Plaintiff argues that, by natural extension, the parents of children should likewise be encompassed within the class. This argument is not persuasive. The children often need to be protectedfrom the abusive parents. It does not logically follow, therefore, that the parent is within the class of persons section 17a-101 was intended to protect. See Zamstein v. Marvesti, 240 Conn. 549, 559-561, 692 A.2d 781
(1997).
Having failed to satisfy the first prong of the three-prong Napoletano
test, it is not necessary to do any further analysis. The court concludes that section 17a-101 does not confer a private right of action upon the plaintiff mother in her individual capacity. Count fourteen of the amended complaint is stricken.
COUNT TWENTY
Count twenty, captioned "Violations of Conn. Gen. Stat. Section 17a-106", alleges that DPH failed to cooperate with DCF and other state agencies in CT Page 3231 investigating and reporting incidents involving Greene, thereby causing injury to Raegan McBride and her mother. DPH contends that count twenty is legally insufficient because section 17a-106 does not create a private right of action.
 Sec. 17a-106. (Formerly Sec. 17-381). Cooperation in relation to prevention, identification and investigation of child abuse and neglect. All law enforcement officials, courts of competent jurisdiction, school personnel and all appropriate state agencies providing human services in relation to preventing, identifying, and investigating child abuse and neglect shall cooperate toward the prevention, identification and investigation of child abuse and neglect
With respect to the claimed injuries to Raegan McBride, as discussed supra, section 52-555 of the General Statutes is the exclusive remedy for her death. Lynn v. Haybuster Manufacturing, Inc., 226 Conn. 282,627 A.2d 1288 (1993). With respect to the claimed injuries to Patrice Ward individually, the court finds this count should be stricken for a number of reasons. First, section 17a-106 is a broad policy directive and does not afford an individual a private right of action for an alleged breach of nonspecific provisions requiring the cooperation of the named entities. Second, if plaintiffs' position is correct, this statutory provision subjects "courts of competent jurisdiction" and "all appropriate state agencies" to suit for an alleged failure to cooperate in preventing child abuse, effectively abrogating judicial immunity and providing a blanket waiver of sovereign immunity in these instances. To state such a proposition is to refute it.
Third, any duties imposed by section 17a-106 are public duties, i.e., DPH's duty was public in nature and it owed no specific duty to Ms. Ward to cooperate with DCF and other state agencies in the investigation of child abuse involving Greene. Shore v. Stonington, 187 Conn. 147, 152,444 A.2d 1379 (1982).
 If the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed, if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages. CT Page 3232
Id., 152, quoting from Leger v. Kelley, 142 Conn. 585, 589-590,116 A.2d 429 (1955).
The court finds the "public duty doctrine" is applicable to this case. There are three limited exceptions to this general rule. The only exception which may arguably apply is that liability may still attach when "it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm." Id., 153. As in Shore, the court finds that the alleged violations did not threaten an identifiable victim with imminent harm. Moreover, even if the court were to agree with plaintiffs' position, the identifiable victim would have to be Raegan McBride. As previously discussed, section52-555 of the General Statutes, the wrongful death statute, is the exclusive remedy for her death.
For these reasons, count twenty of the amended complaint is stricken in its entirety.
COUNT TWENTY-ONE
Count twenty-one, captioned "Violations of Conn. Gen. Stat. Section19a-82", alleges that DPH failed to make proper periodic inspections of Greene's day care facility, thereby causing injury to Raegan McBride and her mother. DPH claims count twenty-one must be stricken as legally insufficient because section 19a-82 does not govern "family day care homes" such as the one operated by Greene.
Section 19a-82 provides, in relevant part, that "the commissioner shall make periodic inspections of licensed day care centers and group day care homes. . . ." The terms "day care center" and "group day care home" are defined in section 19a-77 of the General Statutes. As conceded by plaintiffs at page 3 of their brief in opposition to DPH's motion to strike, Greene's facility was licensed as a "family day care home." That term is also defined in section 19a-77 of the General Statutes. Plaintiffs contend count twenty-one is still applicable because Greene operated a day care facility that was too large to be legally licensed as a family day care home.
The court finds. given the undisputed fact that Greene's facility was licensed as a "family day care home", section 19a-82 of the General Statutes is inapplicable because the inspection provisions pertain only to "day care centers" and "group day care homes." Accordingly, the court grants DPH's motion to strike count twenty-one of the amended complaint.
COUNT TWENTY-TWO
CT Page 3233
Count twenty-two, captioned "Violations of Conn. Gen. Stat. Section19a-83", alleges that the DPH violated this statutory provision by "failing to make Ms. Greene properly file annual day care reports," thereby causing injury to Raegan McBride and her mother. DPH claims this count is legally insufficient because the referenced statute is inapplicable to family day care homes or. if applicable, places a duty upon Greene to file such reports.
Section 19a-83 provides as follows:
 Sec. 19a-83. (Formerly Sec. 19-43h). Reports of licensees. Each licensee under sections 19a-77 to 19a-80, inclusive, and 19a-82 to 19a-87, inclusive, shall file annually and each temporary licensee shall file semiannually with the Commissioner of Public Health a report containing such information concerning its operation, program and finances as may be required by regulations adopted under said sections.
The licensing requirements for family day care homes are found at section19a-87b of the General Statutes, making the applicability of section 19a-83
to the facts of this case questionable. Nevertheless, even if this statutory provision does apply to Greene's facility, it is Greene's responsibility to file such reports. The statute does not enumerate any duties which could be violated by DPH. Accordingly, DPH's motion to strike count twenty-two of the amended complaint is granted.
COUNT TWENTY-THREE
Count twenty-three, captioned "Violations of Conn. Gen. Stat. Section19a-87b", alleges that the DPH violated this statutory provision by "failing to make proper inquiry and investigation into allegations of abuse and neglect against Ms. Greene and by failing to make proper inquiry and investigation into Ms. Greene's day care license application and subsequent renewal applications of that license," thereby causing injury to Raegan McBride and her mother. DPH claims this count is legally insufficient because: 1) the referenced statute does not provide for a private cause of action; and 2) such a claim is barred by the public duty doctrine.
Section 19a-87b provides, in relevant part, as follows:
 Sec. 19a-87b. (Formerly Sec. 17-585 (b)(d)). License required for family day care homes. Criminal background check. Regulations. Fees. Notification ofCT Page 3234 changes in regulations. (a) No person, group of persons, association, organization, corporation, institution or agency, public or private, shall maintain a family day care home, as defined in section 19a-77, without a license issued by the Commissioner of Public Health. . . . Before a family day care home license is granted, the department shall make an inquiry and investigation which shall include a visit and inspection of the premises for which the license is requested. . . . The commissioner shall not require an annual inspection for homes seeking license renewal or for licensed homes except that the commissioner shall make unannounced visits, during customary business hours, to at least thirty-three and one-third per cent of the licensed family day care homes each year. . . .
With respect to the claimed injuries to Raegan McBride, as discussed supra, section 52-555 of the General Statutes is the exclusive remedy for her death. Lynn v. Haybuster Manufacturing, Inc., 226 Conn. 282,627 A.2d 1288 (1993). With respect to the claimed injuries to Patrice Ward in her individual capacity, the court finds that the plaintiff mother is not one of the class for whose benefit the statute was enacted. Napoletano v. Cigna Healthcare of Connecticut, Inc.,238 Conn. 216, 249, 680 A.2d 127 (1996). Furthermore, for the reasons discussed supra, this claim is barred by the public duty doctrine. Shorev. Stonington, 187 Conn. 147, 152, 444 A.2d 1379 (1982). Accordingly, count twenty-three of the plaintiffs' amended complaint is stricken.
COUNT TWENTY-FOUR
Count twenty-four, captioned "Violations of Conn. Gen. Stat. Section19a-77", alleges that DPH failed to limit the number of children in Greene's day care facility, thereby causing injury to Raegan McBride and her mother. DPH claims count twenty-four must be stricken as legally insufficient because this provision is a definition section of the General Statutes and does not impose any obligations on any entity.
The court agrees. There are no enumerated duties in section 19a-77
and, therefore, no violation could have been committed by DPH. Count twenty-four of the amended complaint is stricken.
CONCLUSION
For the foregoing reasons, the court grants the defendants' motions to strike counts three, fourteen, twenty, twenty-one, twenty-two, CT Page 3235 twenty-three and twenty-four of the plaintiffs' amended complaint dated July 27, 2000.
Koletsky, J.