CATHERINE M. LADD, ADMINISTRATRIX (ESTATE OF BRIAN D. LADD), ET AL. *v.* DOUGLAS TRUCKING COMPANY ET AL.
(13004)

PETERS, C. J., HEALEY, SHEA, DUPONT and McKEEVER, Js.

Argued February 5—decision released April 14, 1987

*Peter G. Perakos II,* with whom, on the brief, was *Barry S. Zitser,* for the appellant (plaintiff).

*George J. DuBorg,* for the appellees (defendants).

SHEA, J. The plaintiff, as administratrix of the estate of her deceased husband and also in her individual capacity as his surviving wife, brought this action in the federal district court seeking damages resulting from his death in a motor vehicle accident. The defendants, who are the driver, the lessee and the lessor of the truck alleged to have struck the vehicle being operated by the decedent, moved to dismiss the third count of the complaint as amended, which set forth the claim of the plaintiff for the loss of consortium of her husband. The District Court, concluding that the issue of the validity of a claim for loss of consortium following the death of a spouse had not been authoritatively resolved by any decisions of this court, denied the motion to dismiss without prejudice to its later renewal and, pursuant to General Statutes § 51-199a and Practice Book § 4168, certified to this court the following questions: "1. May a surviving spouse recover for ante-mortem loss of consortium in a wrongful death action under Connecticut statutory law and/or common law? 2. May a surviving spouse recover for post-mortem loss of consortium in a wrongful death action under Connecticut statutory law and/or common law?"

The statement of facts included in the certification order recites that on September 27, 1985, a tractor-trailer driven by the defendant David R. Sterling

crossed the median divider on interstate highway 84 in Danbury and collided with a vehicle being operated by Brian Ladd, the decedent. As a result of the collision, Ladd received severe injuries from which he died on October 7, 1985. The plaintiff, on her own behalf as his wife, seeks damages for the loss of consortium of her husband during the ten days that he lived following the accident and also for the period after his death. As administratrix of his estate, she claims additional damages resulting from the death pursuant to our wrongful death statute, General Statutes § 52-555.

I

The defendants concede that a spouse may recover for a loss of consortium occurring during the period between the accident and the death of the accident victim. In *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 408 A.2d 260 (1979), this court first recognized for a nonintentional tort a cause of action in behalf of a spouse for the loss of consortium of a marital partner who had been injured. "[T]he mental and emotional anguish caused by seeing a healthy, loving, companionable mate turn into a shell of a person is undeniably a real injury. Moreover, an injury to one's spouse may turn a happily married man or woman into a lifelong nurse and deprive him or her of an opportunity of having children or raising a family." Id., 493.

Though the scenario described in *Hopson* may not be wholly appropriate in relation to a loss of postmortem consortium, since death at least terminates the duties of the surviving spouse to the decedent, it is fully applicable for the period that a victim lived following the onset of his injuries. Just as the claim of a decedent for injuries not involving his death survives his demise by virtue of our survival-of-actions statute, General Statutes § 52-599,[1] the claim of a spouse for antemor-

---

[1] "[General Statutes] Sec. 52-599. SURVIVAL OF ACTIONS AND CAUSES OF ACTIONS. (a) A cause or right of action shall not be lost or destroyed by

tem loss of consortium because of such nonfatal injuries is no less viable. The circumstance that injuries to an accident victim have culminated in death does not extinguish his claim for antemortem damages for those injuries, as indicated by the reference in General Statutes § 52-555,[2] our wrongful death statute, to the recoverability of damages for injuries resulting in death, "whether instantaneous or otherwise."

In an action by the estate of the victim pursuant to § 52-555, of course, the damages suffered before his death are one of the elements of the "just damages" to be awarded and must be sought in that action rather than in a separate suit under the survival-of-actions statute. *Floyd* v. *Fruit Industries, Inc.*, 144 Conn. 659,

the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months thereafter and prosecute the action in the same manner as his testator or intestate might have done if he had lived. If a party defendant dies, the plaintiff, within one year thereafter, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed.

"(c) The provisions of this section shall not apply: (1) To any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto, (2) to any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants, or (3) to any civil action upon a penal statute."

[2] "[General Statutes] Sec. 52-555. ACTIONS FOR INJURIES RESULTING IN DEATH. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

669, 136 A.2d 918 (1957). "[T]here cannot be a recovery of damages for death itself under the wrongful death statute in one action and a recovery of antemortem damages, flowing from the same tort, in another action brought under [§ 52-599]." Id. Because the death of a victim does not terminate his claim for antemortem injuries, whether fatal or not, it would be wholly incongruous for his death to result in wiping out the related claim of his spouse for the antemortem loss of consortium flowing from the same injuries.

The same conclusion has been reached in the few cases that have addressed the issue of whether under Connecticut law a claim for antemortem loss of consortium must abate upon the death of the victim. See *Bauer* v. *Johns-Manville Corporation,* 599 F. Sup. 33, 36 (D. Conn. 1984); see also *Hume* v. *Hertz Corporation,* 628 F. Sup. 763, 765 (D. Conn. 1986).

To the first question certified by the District Court we respond that a spouse may recover for antemortem loss of consortium in her individual capacity where her common law claim has been joined with the wrongful death action brought by the decedent's estate pursuant to § 52-555.

## II

The recoverability of damages for postmortem loss of spousal consortium confronts the obstacles created by the generally accepted view that there was no common law right of recovery for the wrongful death of a victim on the part of either his estate or members of his family. W. Prosser & W. Keeton, Torts (5th Ed.) § 127, p. 945; 2 F. Harper & F. James, Torts § 24.1, p. 1284. "We have recognized it as a rule of the common law generally applicable that no action lies for damages resulting from the death of a human being." *Lucier* v. *Hittleman,* 125 Conn. 635, 636, 7 A.2d 647

(1939).[3] "It is a singular fact that by the common law the greatest injury which one man can inflict upon another, the taking of his life, is without private remedy. By a strange fiction the extremity of the wrong precludes redress." *Goodsell* v. *Hartford & New Haven R. R. Co.*, 33 Conn. 51, 55 (1865).

The manifest injustice of the prevailing common law rule led in England to the passage in 1846 of the Fatal Accidents Act, more widely known as Lord Campbell's Act, 9 & 10 Victoria, c. 93, a statute deemed to have created a new right of action "for the benefit of the wife, husband, parent, and child . . ." of the decedent, though brought by the representative of his estate in

---

[3] In the early case of *Cross* v. *Guthery*, 2 Conn. (Root) 90 (1794), this court upheld a verdict in favor of the plaintiff husband who had sought damages for loss of the service, company and consortship of his deceased wife and also for his expenses in a malpractice action based upon the breach of a contract he had made with the defendant physician to perform breast surgery upon the wife of the plaintiff with requisite skill and care. This case preceded the pronouncement by Lord Ellenborough in *Baker* v. *Bolton,* 1 Camp. 493, 170 Eng. Rep. 1033 (1808), that "[i]n a civil Court, the death of a human being could not be complained of as an injury," a view that became generally accepted in the United States as well as in England. In *Insurance Co.* v. *Brame,* 95 U.S. 754, 756, 24 L. Ed. 580 (1878), the United States Supreme Court concluded that "the proposition, that by the common law no civil action lies for an injury which results in death," was no longer open to question in view of the array of authorities supporting it. The widespread acceptance of Lord Ellenborough's view was subsequently criticized by that court in *Moragne* v. *States Marine Lines, Inc.,* 398 U.S. 375, 379–93, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970), where an action for wrongful death under federal maritime law based upon a violation of maritime duties was created by the court.

This court first adopted the prevailing view that no action for damages resulting from death could be sustained in the absence of statute, without mention of the conflicting *Cross* precedent, in *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven R. R. Co.,* 25 Conn. 265, 272–74 (1856). Later cases that followed this view also omitted any discussion of *Cross; Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 620–21, 45 A. 435 (1900); *Goodsell* v. *Hartford & New Haven R.R. Co.,* 33 Conn. 51, 55 (1865); *Murphy* v. *New York & New Haven R.R. Co.,* 30 Conn. 184, 188 (1861); until it was recognized in *Lucier* v. *Hittleman,* 125 Conn. 635, 637–39, 7 A.2d 647 (1939), that *Cross* had been effectively overruled.

their behalf. 2 F. Harper & F. James, supra, § 24.2, pp. 1285–86 n.2, quoting 9 & 10 Victoria, c. 93, § 2. Similar statutes were soon adopted by many states in this country. These enactments, patterned after Lord Campbell's Act, are generally regarded as allowing the specified beneficiaries to recover for the personal losses they have sustained because of the death of a relative. Such a cause of action "does not rest upon the basis of an injury suffered by the deceased's estate; its foundation is the loss sustained by certain persons designated as beneficiaries of the recovery." *Kling* v. *Torello,* 87 Conn. 301, 304, 87 A. 987 (1913). Although earlier decisions under these statutes limited recovery to losses of pecuniary benefits, many states presently also allow compensation for less tangible elements, including the loss of consortium. 1 S. Speiser, Recovery for Wrongful Death (2d Ed.) § 3:49.

In Connecticut the legislature in 1848 responded to the problems created by the death of an accident victim by enacting two statutes: (1) that "no action to recover damages for injury to the person . . . shall abate by reason of his death, but his executor or administrator may enter and prosecute the same in the same manner as is now by law provided in regard to other actions"; and (2) that "[a]ctions for injury to the person, whether the same do or do not result in death . . . shall survive to his executor or administrator . . . ." Public Acts 1848, c. 5, §§ 1, 2. The first provision was intended to overcome the common law rule that a "personal" action, such as a suit for injuries, does not survive the death of the claimant, a doctrine expressed in the maxim, actio personalis moritur cum persona. *Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 622, 45 A. 435 (1900). This statutory principle is now incorporated in our survival-of-actions statute, General Statutes § 52-599. The second provision was intended to circumvent the common law

rule precluding recovery of damages resulting from death. *Broughel* v. *Southern New England Telephone Co.,* supra, 622–23. This enactment was the progenitor of our present wrongful death statute, § 52-555, which allows the estate to recover in the same action damages suffered by the deceased victim before death as well as those accruing to his estate thereafter. *Floyd* v. *Fruit Industries, Inc.,* supra, 669.

Our wrongful death statute has been viewed as transferring to his estate "the right of action which the decedent had for his sufferings and disability during life, while the death enlarges his right of recovery by permitting an award of damages for the death itself as one of the harmful results of the wrongful act." *Kling* v. *Torello,* supra, 306. "It is a necessary corollary that damages under our statute are not based upon any loss caused to the family or relatives of the deceased . . . ." *Chase* v. *Fitzgerald,* 132 Conn. 461, 467, 45 A.2d 789 (1946).

The plaintiff relies principally upon a decision of the Superior Court, *Hinde* v. *Butler,* 35 Conn. Sup. 292, 408 A.2d 668 (1979), which held that our decision in *Hopson,* recognizing a cause of action for loss of spousal consortium, authorized a wife to intervene in a death action brought in behalf of the estate of her deceased husband for the purpose of obtaining compensation for loss of consortium as part of the "just damages" recoverable under § 52-555. The statute, however, authorizes an award only to the estate of the decedent. Furthermore, any damages recovered by the representative of the estate for a death occurring after October 1, 1961, must be distributed in accordance with the laws of intestacy or pursuant to the will of the decedent. General Statutes § 45-280 (b). The statutory provision that "such executor or administrator may recover from the party legally at fault for such injuries just damages" cannot be read to authorize a recovery by or on behalf

of any other person. If the claim of the plaintiff for loss of postmortem consortium is maintainable at all, it is not by virtue of § 52-555, which permits a recovery of death damages only by the decedent's estate.

The plaintiff also contends that our decision in *Hopson* created a separate common law cause of action for a spouse to recover damages for "injury to a happy marriage," and thus the termination of the marriage by wrongful death is an element of her loss of consortium for which compensation should be allowed. In *Hopson v. St. Mary's Hospital,* supra, 494, however, we characterized the action for loss of spousal consortium as "derivative of the injured spouse's cause of action" and indicated that such a claim would be barred when a suit brought by the injured spouse had been terminated by settlement or by an adverse judgment on the merits. A claim for loss of antemortem consortium may be regarded as derivative of the portion of the claim of the deceased relating to the recovery of antemortem damages for the death that the estate is authorized by § 52-555 to pursue. A claim for loss of postmortem consortium, however, cannot be derivative of the decedent's claim for postmortem damages under that statute because the statute itself provides the sole authority for the recovery of *any* damages resulting from a death.

Since its enactment our wrongful death statute has been regarded as the exclusive means by which damages resulting from death are recoverable. In *Lucier v. Hittleman,* 125 Conn. 635, 7 A.2d 647 (1939), a suit by a father to recover as damages the wages lost to him by reason of the death of his minor son in an automobile accident was held to be barred by the common law rule precluding recovery for death damages unless authorized by statute. "The rule has, by most courts having occasion to consider the question apart from statutes recognizing a right of action, been applied where a parent has sought to recover wages lost by

reason of the wrongful death of a minor son or husband, to recover for the loss of consortium resulting from the death of his wife, and to other like situations." Id., 637. More recently, in *Foran* v. *Carangelo,* 153 Conn. 356, 216 A.2d 638 (1966), we adhered to the view that damages resulting from a death are recoverable only pursuant to statute when we rejected claims for loss of consortium by the husband of the deceased wife and also by his children. "In other words, death and its direct consequences can constitute recoverable elements of damages only if, and to the extent that, they are made so by statute." Id., 359.

The plaintiff does not dispute that the weight of precedent in this state forecloses her claim for post-mortem loss of consortium. Essentially her claim is that we should now acknowledge that this court, as well as courts throughout this country, went astray more than a century ago in blindly following Lord Ellenborough's ill considered pronouncement that the civil law afforded no recourse for a death.[4] It cannot be gainsaid that error, however belatedly recognized, ought not to be perpetuated. Our legislature, however, was not slow to perceive the injustice of the accepted common law doctrine and chose in 1848 the remedy of allowing the estate of the victim to recover all of the damages resulting from a death. By that enactment the legislature implicitly rejected the alternative Lord Campbell's Act remedy of permitting surviving beneficiaries of the victim to be recompensed directly for their personal losses resulting from the death. We have previously observed that "our statutory cause of action works out much more fairly than wrongful death statutes patterned on Lord Campbell's Act" and "obviates most, if not all, of the complexities and inequities inherent in the Lord

[4] An earlier statute allowing some civil recompense for a death had been enacted in 1808. It provided for the recovery of a fixed sum for a death due to a highway defect. General Statutes (1808 Rev.) title xxix, § 3, p. 120.

Campbell type of statute." *Foran* v. *Corangelo,* supra, 361. The statute as construed by this court provides for a recovery by the estate of the decedent of damages for the destruction of his earning capacity, an element of the award that ordinarily corresponds closely to the pecuniary losses his family will suffer because of his death. See *Floyd* v. *Fruit Industries, Inc.,* supra, 670. The estate may also be compensated for the termination of the decedent's ability to carry on nonpecuniary activities of life, such as those of a husband, wife or parent. *Chase* v. *Fitzgerald,* supra, 470. The focus under our statute is upon the value of the decedent's life from his viewpoint, however, not from that of his family. Id., 468–69. In permitting the estate to recover the value to the decedent of his nonpecuniary as well as pecuniary services to others, the beneficiaries of the estate do receive compensation for the loss of those services, although the measure of their value is their worth to the decedent. Whether the vantage point for measuring these losses should be shifted from the decedent, who can never actually experience them, to the family members on whom they are in fact imposed, as is done under statutes similar to Lord Campbell's Act, is a question for the legislature to resolve.

Our response to the second question posed, may a spouse recover for postmortem loss of consortium under Connecticut statutory or common law, is "no."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.