[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
FACTS
This action arises out of the death, by electrocution, of Peter LaPrad [the decedent]. On or about September 18, 1992, the decedent died of electrocution, after attempting to unplug an appliance connected to allegedly defective wiring in the kitchen at 15 Trask Road in Willington, Connecticut. The minor plaintiff, Jacob LaPrad, was present at the time that his father, the decedent, allegedly suffered the massive electrical shock and cardiac dysrhythmia which caused his collapse and death.
On April 11, 1994, the plaintiffs, Michele LaPrad — in her individual capacity and as Administratrix of the Estate of Peter LaPrad — Jacob LaPrad, and Sarah LaPrad, filed an eight count complaint against the defendant, William Parizek, the alleged landlord/owner of the premises where the decedent allegedly sustained the injuries which caused his death. Counts one and two of the plaintiffs' complaint are wrongful death actions brought pursuant to General Statutes § 52-555. Counts three and four are loss of consortium actions brought by the decedent's widow, Michele LaPrad, pursuant to General Statutes § 52-555b. Counts five and six seek recovery on behalf of the decedent's minor son, Jacob, for bystander emotional distress. Counts seven and eight seek recovery on behalf of the decedent's minor children, Jacob and Sarah, for loss of parental consortium.
On June 28, 1994, the defendant filed a motion to strike counts five through eight of the plaintiffs' complaint. In support thereof, the defendant filed a memorandum of law and a copy of Poteat v. Rose, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 527853 (March 17, 1994, Aurigemma, J.). On July 11, 1994, the plaintiffs filed a memorandum of law in opposition and copies of the following cases: Courchesne v. Dickau Bus Co., 11 Conn. L. Rptr. 463 (May 5, 1994, Corradino, J.); Diaz v. Camacho, 8 CSCR 961 (August 23, 1993, Ballen, J.); Paradiso v. Nasinka, 11 Conn. L. Rptr. 53
(February 8, 1994, Sullivan, J.); Henderson v. Micciche,6 Conn. L. Rptr. 317 (May 1, 1992, Murray, J.); Sliney v. Denisanko,8 CSCR 887 (August 6, 1993, Gordon, J.); and Beckwith v. Akus,8 CSCR 364 (March 15, 1993, Hurley, J.). CT Page 9408
DISCUSSION
A motion to strike challenges the legal sufficiency of a pleading; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989); or any count thereof. Practice Book § 152. In ruling upon a motion to strike, the court is limited to the facts alleged in the pleading, Rowe v. Godou, 209 Conn. 273, 278,550 A.2d 1073 (1988); and must construe those facts in the light most favorable to the pleader. Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." Bouchard v. People'sBank, 219 Conn. 465, 471, 594 A.2d 11 (1991).
The defendant argues that counts five and six of the plaintiffs' complaint should be stricken, on the ground that Connecticut does not recognize a cause of action for emotional bystander distress. Additionally, the defendant argues that counts seven and eight of the plaintiffs' complaint should be stricken, on the ground that Connecticut does not recognize a cause of action for loss of parental consortium. In response, the plaintiffs argue that both bystander emotional distress and loss of parental consortium constitute viable causes of action in Connecticut.
I. Bystander Emotional Distress
The Connecticut Supreme Court has addressed the issue of recovery for bystander emotional distress on three occasions;Strazza v. McKittrick, 146 Conn. 714, 156 A.2d 149 (1959); Amodiov. Cunningham, 182 Conn. 80, 438 A.2d 6 (1980); and Maloney v.Conroy, 208 Conn. 392, 545 A.2d 1059 (1988).
In Strazza v. McKittrick, supra, 146 Conn. 714, wherein the Supreme Court first addressed the viability of a bystander emotional distress claim, a plaintiff mother sought recovery for emotional distress that she allegedly suffered as a result of fearing injury to herself and her son when the defendant's truck crashed into her rear porch. Strazza v. McKittrick, supra,146 Conn. 716-19. At the time she heard and felt the crash, the plaintiff thought that her young son was on the subject rear porch; accordingly, she alleged, inter alia, that she suffered nervous shock due to her fear that her son had been injured. CT Page 9409 Id., 717.
The Supreme Court ruled that, while the plaintiff could recover for emotional distress caused by fear of injury toherself, there could be no recovery "for injuries occasioned by fear of threatened harm or injury to the person or property ofanother," because "[s]uch injuries are too remote in the chain of causation to permit recovery." (Emphasis added.) Id., 718-19. The rule articulated by the Strazza court is absolute and unambiguous: "Even where a plaintiff has suffered physical injury in the accident, there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." Id., 719. At the time the Strazza court issued its ruling, many jurisdictions concurred with its reasoning. See id., 719.
It was not until 1980, in Amodio v. Cunningham, supra,182 Conn. 80, that the Connecticut Supreme Court again addressed the issue of bystander emotional distress, this time in the context of a medical malpractice action. In Amodio, the plaintiff alleged that she suffered physical, mental and emotional harm caused by witnessing the death of her daughter, which allegedly occurred due to the negligent conduct of the defendant. Id., 81-84. In its opinion, the Amodio court noted that there was a growing trend among other jurisdictions to recognize a cause of action for bystander recovery for emotional distress, and that this trend had its genesis in the case of Dillon v. Legg,69 Cal.Rptr. 72, 441 P.2d 912 (1968). Id., 87.
In Dillon, the sister and mother of a child pedestrian killed by a negligent automobile driver sought recovery for emotional distress resulting from witnessing the child's death. While the sister may have been in the "zone of danger," the mother concededly was not. Dillon v. Legg, supra, 441 P.2d 915. The California Supreme Court in Dillon held that the right to recover should not be dependent upon whether a claimant was within a zone of danger, but rather should be based upon "the neutral principles of foreseeability, proximate cause and consequential injury that generally govern tort law." Id., 915-18.
The Dillon court articulated a three-prong test to be utilized in determining whether, in a given case, the plaintiff's injury was so foreseeable as to give rise to a duty owed by the negligent defendant. CT Page 9410
 (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;
 (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence and;
 (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship
Id., 920.
After considering the recent trend and the Dillon case, however, the Amodio court declined to adopt Dillon, and further noted that, in any event, the Dillon requirements were not satisfied by the facts of the particular case before it:
 It is clear . . . that even were we inclined to adopt the approach taken in Dillon and the cases relying thereon, the complaint in the present case would nonetheless fail to state a cognizable cause of action . . . [because] the allegations of the complaint indicate that the injuries suffered by the plaintiff's child became manifest a considerable period of time after the alleged negligence of the defendants occurred.
(Emphasis added.) Amodio v. Cunningham, supra, 182 Conn. 92-93. As can be seen from the quote set forth above, dicta in the Amodio
opinion implied that Strazza's total bar to bystander recoverymight be abandoned in a case that presented facts that satisfied the Dillon factors. However, the court in Amodio did not expressly overrule Strazza nor officially recognize a cause of action for bystander recovery.
The Connecticut Supreme Court addressed the issue of bystander recovery for emotional distress one last time, inMaloney v. Conroy, supra, 208 Conn. 392, wherein the court definitively ruled that no bystander emotional distress claim is available in the medical malpractice context. In Maloney, the plaintiff daughter sought recovery for the negligent infliction CT Page 9411 of emotional distress as the result of being present at her mother's bedside and watching her mother's health deteriorate, due to the alleged negligence of the defendants. Id., 393-94. As in Amodio, the plaintiff in Maloney did not allege or claim any contemporaneous sensory perception of the negligent conduct of the defendants, and therefore, failed to satisfy the Dillon
requirements. Maloney v. Conroy, supra, 206 Conn. 396-97. The plaintiff in Maloney sought an expansion of the Dillon
requirements in accordance with a more recent California case,Ochoa v. Superior Court, 216 Cal.Rptr. 661, 703 P.2d 1 (1985). In Ochoa, the court modified the contemporaneous sensory perception requirement of Dillon to allow bystander recovery for emotional distress resulting from negligence "when there is observation of the defendant's conduct and the [victim's] injury and contemporaneous awareness [that] the defendant's conduct or lack thereof is causing harm to the [victim]." Ochoa v. SuperiorCourt, supra, 703 P.2d 8.[1]
The Maloney court declined to expand the boundaries fixed by the Amodio court, and held that, regardless of whether the Dillon
factors were satisfied, a bystander to medical malpractice could not recover for emotional distress. Maloney v. Conroy, supra,208 Conn. 397, 402. Indeed, the court stated that, "we are not inclined to follow the lead of the California courts in allowing a bystander to recover for emotional disturbance resulting from malpractice upon another person that a bystander may have observed." Id., 397. Moreover, as in Amodio, the Supreme Court in Maloney declined to expressly overrule Strazza or to officially recognize a cause of action for bystander recovery for the negligent infliction of emotional distress:
 Whatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice . . . we should return to the position we articulated in Strazza that there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another. . . . We are not inclined to resume our dalliance with the Dillon
guidelines that we held not to be satisfied . . . in Amodio . . . .
(Emphasis added.) Id., 402.
Nevertheless, a split of authority has developed among the CT Page 9412 lower courts in Connecticut as to whether a cognizable cause of action exists for bystander recovery for emotional distress. Many Superior Court decisions have interpreted the three Supreme Court decisions discussed above to allow recovery by a bystander for emotional distress, at least where the plaintiff's claim is not based on the observance of a course of negligent medical treatment. See, e.g. Courchesne v. Dickau Bus Co.,11 Conn. L. Rptr. 463 (May 5, 1994, Corradino, J.)[2]; Diaz v.Camacho, supra, 8 CSCR 961; Alderfer v. Scarveles,9 Conn. L. Rptr. 86 (May 11, 1993, Dorsey, J.); Granger v. Marriott Corp.,7 CSCR 375 (February 27, 1992, Hennessey, J.); Roe v. Hocon GasInc., 7 CSCR 371 (February 27, 1992, Rush, J.); Stoughton v.Sabolcik, 7 CSCR 335 (January 24, 1992, Pickett, J.); Short v.State, 4 Conn. L. Rptr. 77 (May 13, 1991, Schimelman, J.);Salvadori v. Rivera, 4 Conn. L. Rptr. 16 (May 2, 1991, Lewis, J.); Lawrence v. Sniffen, 3 Conn. L. Rptr. 278 (February 21, 1991, Ryan, J.); LeMoine v. Soboleski, 2 Conn. L. Rptr. 569
(October 4, 1990, O'Keefe, J.); Buynovsky v. Ford Motor Co.,1 Conn. L. Rptr. 542 (April 23, 1990, Maiocco, J.); Uricchio v.Myjack, 4 CSCR 385 (April 17, 1989, Stengel, J.); Higley v.RESCUE, 4 CSCR 315 (March 10, 1989, West, J.); Glendening v.Weis, 41 Conn. Sup. 165 (1988) (Hammer, J.).
 Some of the reasons stated by these courts in favor of recognizing a cause of action for bystander emotional distress are: (1) that the holdings in Amodio v. Cunningham, supra, and Maloney v. Conroy, supra, are limited to claims which are predicated on the observation of a course of negligent medical treatment (see, e.g., Alderfer v. Scarveles, supra, 86; Buynovsky v. Ford Motor Co., supra, 544); (2) that Amodio implies that a plaintiff who meets the Dillon v. Legg test has stated a legally sufficient claim for bystander emotional distress (see, e.g., Roe v. Hocon Gas Inc., supra, 371; Buynovsky v. Ford Motor Co., supra, 544); and (3) that the holding in Strazza v. McKittrick, supra, is limited to situations where the bystander emotional distress claim is predicated solely upon the fear of injury to a family member (see, e.g., Roe v. Hocon Gas, Inc., supra, 371; LeMoine v. Soboleski, supra, 570).
Diaz v. Camacho, supra, 8 CSCR 962 n. 2.
However, other lower courts have consistently refused to recognize the existence of the cause of action. See, e.g., CT Page 9413Rodriguez v. Bristol Housing Authority, 9 CSCR 418 (March 16, 1994, Berger, J.); Silva v. Carlson, 5 Conn. L. Rptr. 433
(January 9, 1992, Mihalakos, J.); Messina v. Vellafonck,5 Conn. L. Rptr. 329 (December 11, 1991, Gray, J.); Carter v. Shaw,5 Conn. L. Rptr. 248 (November 25, 1991, Fracasse, J.); Uricheck v.Amazing Stores, Inc., 4 Conn. L. Rptr. 320 (July 31, 1991, Murray, J.); Belanger v. Glastonbury, 3 Conn. L. Rptr. 478 (April 22, 1991, Freed, J.); Brown v. Cohen, Foster DiRienzo,5 CSCR 376 (May 7, 1990, Flanagan, J.); Tuten v. Bishop's Garage, Inc.,4 CSCR 520 (June 1, 1989, Koletsky, J.); Talbot v. Woodward,3 CSCR 525 (May 9, 1988, O'Connell, J.).
 Some of the reasons stated for striking a claim for bystander emotional distress are: (1) that Strazza v. McKittrick, supra, is controlling and the Connecticut Supreme Court has not recognized a cause of action for bystander emotional distress in any context (see, e.g., Carter v. Shaw, supra, 248); and (2) that neither Amodio v. Cunningham, supra, nor Maloney v. Conroy, supra, adopted the rule of Dillon v. Legg (see, e.g., Tuten v. Bishop's Garage, Inc., supra, 520; Talbot v. Woodward, supra, 525).
Diaz v. Camacho, supra, 8 CSCR 962 n. 2.
Apparently, the conflict among the trial court judges is due to differing interpretations of the Connecticut Supreme Court's decisions in this area. However, although many lower court decisions have recognized a cause of action for bystander recovery for the negligent infliction of emotional distress, neither the Appellate Court nor the Supreme Court of Connecticut has expressly departed from or placed limitations upon the holding of Strazza. In this regard, Judge Freed's analysis, supportive of the view refusing to recognize the cause of action, is most persuasive:
 This court has carefully analyzed both Amodio and [Maloney] in an attempt to glean from them some affirmative departure from the court's expressed view in Strazza v. McKittrick, supra, and can find no such departure . . . . [I]n Maloney v. Conroy, . . . the court reiterated its view that Strazza continues to be the law in Connecticut, when it cited 2 Restatement (Second), Torts Sec. 313(2), comment d, that only fear of injury to oneself is recognized as actionable, and that CT Page 9414 one cannot recover for nervous shock from fear of injury to her child. [Maloney v. Conroy, supra,] 399-400.
(Emphasis in original.) Seymour v. Patterson, 5 CSCR 932, 932
(November 8, 1990, Freed, J.). See also Rodriguez v. BristolHousing Authority, supra, 9 CSCR 419 ("[u]ntil the Supreme Court or the legislature approves of this cause of action, this court refuses to do so") This court holds that Strazza, which stands for the proposition that one may not recover for nervous shock and mental anguish caused by the sight of injury or threatened harm to another, continues to be the law in Connecticut today. Accordingly, the defendant's motion to strike counts five and six of the plaintiff's amended complaint is granted, on the ground that those counts fail to state a legally cognizable cause of action.
II. Parental Consortium
"The Connecticut Supreme Court has repeatedly held that in Connecticut, where Lord Campbell's Act has not been the model, damages resulting from death are recoverable only to the extent that they are made so by statute." Wright v. AnesthesiaAssociation of New Haven, Superior Court, judicial district of New Haven, Docket No. 343976 (November 29, 1993, Hodgson, J.), citing Lynn v. Haybuster Mfg., Inc., 226 Conn. 282, 295,627 A.2d 1288 (1993); Ladd v. Douglas Trucking Co., 203 Conn. 187, 196-97,523 A.2d 1301 (1987); Foran v. Carangelo, 153 Conn. 356, 359,216 A.2d 638 (1966).
Counts one and two of the complaint constitute wrongful death actions brought pursuant to General Statutes § 52-555, and counts three and four constitute derivative spousal loss of consortium actions brought pursuant to General Statutes § 52-555b. General Statutes Sec. 52-555, the Connecticut wrongful death statute, provides for recovery by the executor or administrator of the estate for damages to the estate with a focus on damages sustained by the decedent, not by his family. Ladd v. DouglasTrucking Co., supra, 203 Conn. 197; Wright v. AnesthesiaAssociation of New Haven, supra. "There is no statutory provision for recovery for loss of parental or filial consortium." Wrightv. Anesthesia Association of New Haven, supra.
The plaintiffs' suggestion that this court should recognize such a cause of action for reasons of public policy cannot be followed in view of the Supreme Court's unequivocal statement CT Page 9415 that "`[w]hether the vantage point for measuring [losses resulting from death] should be shifted from the decedent, who can never actually experience them to the family members on whom they are in fact imposed, as is done under statutes similar to Lord Campbell's Act, is a question for the legislature to resolve.'" Wright v. Anesthesia Association of New Haven, supra, quoting Ladd v. Douglas Trucking Co., supra, 203 Conn. 197.
This court agrees with Judge Hodgson's reasoning that "[w]hile the availability of recovery for loss of a parent's services may [or may not] be available under the common law as to claims of injury, this court is constrained by the statutory nature of wrongful death actions to hold that such recovery is not authorized in a wrongful death case." Wright v. AnesthesiaAssociation of New Haven, supra.
 While [General Statutes] §§ 52-55a and 52-555b . . . recognize a cause of action for loss of spousal consortium, no statute recognizes a child's claim for loss of parental consortium upon the death of a parent. The Supreme Court refused to recognize the existence of a cause of action for loss of parental consortium in a death case in Foran v. Carangelo, [supra, 153 Conn. 359-62] in 1966; and the legislature has not expanded the wrongful death statute to create such a cause of action as part of the right of recovery for wrongful death.
Shabazz v. Price, Superior Court, judicial district of New Haven, Docket No. 353763 (April 22, 1994, Hodgson, J.).
Moreover, "[t]he majority of Superior Court decisions have held that there is no cause of action for consortium arising out of the parent-child relationship, regardless of whether a wrongful death action is brought. (Citations omitted.) Paradisov. Nasinka, supra, 11 Conn. L. Rptr. 55. In Rodriguez v. BristolHousing Authority, supra, 9 CSCR 419, Judge Berger set forth the following reasons for this refusal among many courts to recognize the cause of action:
 "[T]he term `consortium' is usually defined as encompassing the services and/or the financial support of a spouse, and the variety of intangible relations which exist between spouses living together in marriage." (Emphasis in original.) Champagne v. Raybestos-Manhattan, 212 Conn. 509, 553 (1989), quoting Hopson v.CT Page 9416 St. Mary's Hospital, 176 Conn. 485, 487 (1979). Moreover, in Mahoney v. Lensink, 17 Conn. App. 130, 141
(1988), rev'd on other grounds, 213 Conn. 548 (1990), the court stated that "the right to consortium is said to arise out of the civil contract of marriage and as such, does not extend to the parent-child relationship."
Rodriguez v. Bristol Housing Authority, supra, 9 CSCR 419. As stated by Judge Berger, "[i]n view of the language of Champagne
and Mahoney, . . . a cause of action for loss of parental consortium does not exist in Connecticut." Id., 419.
Accordingly, the defendant's motion to strike counts seven and eight of the plaintiffs' complaint is granted, on the ground that those counts fail to state a legally cognizable cause of action.
CONCLUSION
The defendant's motion to strike counts five, six, seven and eight is granted.
Klaczak, J.