[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 26, 1996
In this case, motions to strike have been filed by the defendants against the Seventh, Eighth, and Ninth Counts. These counts make a claim for loss of filial consortium. The suit arises out of a tragic accident where plaintiff's decedent was struck and killed while working on the highway as an employee for the State Department of Transportation.
The standards to be applied on a motion to strike are well known. The pleadings of the non-moving party must be given that inference that is most favorable Amodio v. Cunningham, 182 Conn. 80,82 (1980). Two arguments are advanced in behalf of the motions to strike. On the one hand it is argued that there should be no cause of action for loss of filial consortium. Apart from that it is maintained that even if such a cause of action were to be permitted for an antemortem claim it cannot be brought as a post mortem claim.
1.
This court in a previous opinion has recognized a cause of CT Page 5632 action for loss of filial consortium. Scalise v. BristolHospital, 14 CONN. L. RPTR. 534, 1995 Conn. Super LEXIS 1983 (J.D. Hartford). Nothing presented in support of these motions persuades the court to change its position. An article at 54 ALR 4th 112 collects all the cases. That article notes that historically jurisdictions more often than not — just as most lower court opinions here — have not accepted this theory of liability but the modern trend and recent cases accept it. But where new causes of action are being advanced and no appellate court bars them a numbers game approach is neither useful nor acceptable because the ultimate result is that people are being thrown out of court or kept in court to answer a complaint and either side deserves an explanation.
In Hopson v. St. Mary's Hospital, 176 Conn. 485 (1979), the court did allow an action for loss of spousal consortium. But it won't do to stop there and say the appellate courts have not permitted an action for loss of filial consortium therefore the claim cannot be recognized. One whole purpose of motions to strike is to determine whether our jurisdiction should or should not recognize new causes of action. Also appellate courts will often not be best positioned to determine whether our courts should recognize a new cause of action if trial courts by granting motions to strike do not allow full factual records to be developed. So certainly there is no a priori reason why a motion to strike should be granted based on the fact that most lower courts have not permitted this type of claim to be made and the appellate courts have not given their imprimatur to it.
Turning to the merits, it is technically true that the consortium interest protected in Hopson was based on the spousal relationship but that provides no justification for not providing recovery for damage to other relationships where similarly important interests are at stake. As noted in Scalise the Hopson
court did not rest its opinion on technical definitions of the marriage relationship or contract, its rights and legal obligations. Counsel confuses the "fictions" on which courts rely to expand doctrine with the underlying reasons for the expansion. The real basis for the Hopson opinion is set forth at 176 Conn. Page 493:
 Although disparagingly referred to as `sentimental' or `parasitic' damages, the mental and emotional anguish caused by seeing a healthy, loving, companionable mate turn into a shell of a person CT Page 5633 is undeniably a real injury. Moreover, an injury to one's spouse may turn a happily married man or woman into a lifelong nurse and deprive him or her of an opportunity of having children and raising a family . . . In short, the effect of the Marri decision is to deny the existence of harm where harm is assuredly to be expected.
The harm is all the more grievous of course when the spouse is caused to die by an accident.
Here the courts under attack seek recovery for the loss of the "love, affection, companionship, society, moral support, and services of the decedent"; the child of these people is dead. The common law is based on common sense. It is difficult to imagine the legal reasoning that would seek to make a comprehensible distinction between the grief and loss suffered by a spouse at the suffering of another spouse and the grief endured by a parent for the injury or loss of a child. If one interest is protected how can the other not be? Certainly, if both parents were asked together what would be the greater loss, both would say the suffering or loss of the child would be much the greater than that of their spouse. Why shouldn't the law on an issue like this reflect the generally accepted values of the society?
The last redoubt against permitting such a claim as this — the same defensive position opponents of bystander emotional distress retreated to — are the supposedly practical problems that would be created by allowing such a tort action. But some of these "practical problems" are similar to those addressed in Hopson as objections to permitting actions for loss of spousal consortium. See 176 Conn. at pp. 493-94. Also courts throughout the country have imposed various limitations on a loss of filial consortium claim that might be appropriate. Thus the action is limited to the time of the child's minority.Shockley v. Prier, 225 N.W.2d 495, 500 (Wis., 1975); the jury can be told to consider the actual relationship between child and parent to determine whether it was a loving one, id., also seeDymek v. Nyquist, 469 N.E.2d 659, 666 (Ill., 1984); courts have also required that the child be severely incapacitated before the action is allowed Reben v. Ely, 705 P.2d 1360 (Ariz., 1985);Yordon v. Savage, 279 So.2d 844, 845 (Fla., 1973); Shockley v.Prier, supra at 225 N.W.2d page 496.
One or the briefs in support of the motion to strike cite CT Page 5634Shabazz v. Price, 11 CONN. L. RPTR. 331 (1994), where a claim for loss of parental consortium was allowed. The Shabazz court reasoned that recognizing such an action would enforce state policy to protect children and strengthen the family. From this it is argued that here we have a filial consortium claim where parents of a working person have made a claim. No policy of protecting children is at stake and if such an action were allowed "there would be no logical endpoint within the family (or even further) to the persons who could bring such a claim." But the argument in part is based on setting up a straw man. This is not a parental consortium case so the exact interests being protected by such a claim aren't involved, but so what? The same argument could be used against a spousal consortium claim. Protecting children, although obviously a worthy end is not the only familial interest that should be protected by the courts.
Thus, a filial consortium claim in this regard is similar to a spousal consortium claim and even analogous to a bystander emotional distress claim — compensation is allowed for the pain and suffering experienced by an adult claimant in a spousal consortium case and in most bystander emotional distress cases the claimants are often if not usually parents witnessing the injury or death of their child. Again, limitations can be put on this doctrine of filial consortium, perhaps there should be one as to age but I am not prepared to say that this should be decided by a motion to strike without the opportunity being given to build a trial record as to the nature of the parent-child relationship. Perhaps such a relationship can be so close and interdependent that age should not be a factor in this particular case even though it can be a factor or even a bar in most of these cases. In other words, I would permit the action to be recognized with the question of limitations on it to be decided by a more complete record than is available on a motion to strike — perhaps the solution could be to let such a claim go to the jury but have them instructed that the age of the child, its working status and/or the closeness of the relationship could be considered by them.
I will not grant the motion on the first ground asserted.
2.
There is a problem presented by the post mortem nature of the claim. Logically and everything being equal this would not be so and in this regard it would be helpful to analyze this problem by CT Page 5635 examining spousal consortium claims and how ante and post mortem claims for this tort have been treated. In a spousal consortium case damages are awarded for the pain and suffering experienced by the spouse due to the injuries and harm experienced by the other marriage partner. It is odd to say we will recognize and provide compensation for the suffering the spouse experiences when his or her mate survives an accident but is seriously injured but will not allow compensation if the married partner is injured and dies. Is the claimant better off or exposed to less suffering if the mate dies? Is it suffering but a type of suffering which for some reason the courts won't recognize because a test has been devised to indicate that suffering at death is qualitatively different from suffering experienced where there is severe injury? Is there a quantitative notion involved in the sense that if the spouse does not die the suffering will go on for a longer time — but does suffering caused by death end at the funeral? The same considerations apply to a claim for filial consortium and argue for post mortem claims at least based on the logic caused by recognizing the cause of action in the first place.
But this court's reasoning for recognizing a cause of action for loss of filial consortium is based on a recognition and logical extension of the values recognized by the court when it permitted an action for loss of spousal consortium in Hopson v.St. Mary's Hospital, supra. Thus, the manner in which the court has treated claims for post mortem loss of spousal consortium becomes important.
In Ladd v. Douglas Trucking Co., 203 Conn. 187 (1987), the court did not allow an action for post mortem loss of spousal consortium and the court said at page 191:
 The recoverability of damages for post mortem loss of spousal consortium confronts the obstacles created by the generally accepted view that there was no common law right of recovery for the wrongful death of a victim on the party either of his (sic) estate or members of his (sic) family.
The court went on to note that "[t]he manifest injustice of the prevailing common law rule" led in England to the adoption of what is known as Lord Campbell's Act, 9 10 Victoria c. 93. Our state passed similar legislation. Apparently, Lord Campbell did not go far enough, however. At page 194 the court notes. quoting CT Page 5636 from earlier cases, that the statutory cause of action transfers to the estate the action the decedent had for his sufferings during life while the death enlarges the decedent's right of recovery by permitting a damage award for the death itself. The court then quotes from Chase v. Fitzgerald, 132 Conn. 461, 467
(1946), to the effect that: "It is a necessary corollary that damages under our statute are not based on any loss caused to the family or relatives of the deceased." Relying on this reasoning, the court rejected the notion that Hopson created a separate common law cause of action to recover damages to a happy marriage and termination of the marriage by death is just another element of the loss of consortium. The court said loss of antemortem consortium could be derivative of a part of the claim of the decedent relating to the recovery of antemortem damages for the death that is authorized by the statute. The court went on to say:
 A claim for loss of post mortem consortium, however, cannot be derivative of the decedent's claim for post mortem damages under that statute because that statute itself provides for sole authority for the recovery of any damages resulting from a death. (Emphasis added by court.)
The court did not choose then to reverse the underlying common law doctrine that barred the claim for post mortem loss of consortium and this court can certainly not do so. The reasoning of Ladd would bar a claim for post mortem loss of filial consortium[1] just as the court in Shabazz, et al. v. Price, etal., 11 CONN. L. RPTR. 331 (1994), held that it barred a claim for post mortem loss of parental consortium despite recognizing an antemortem claim on the same grounds. Given prior case law the court has no other choice but to grant the motion to strike against the seventh, eight, and ninth counts. The legislature had to provide the relief denied in Ladd and if a cause of action is recognized for loss of filial consortium, legislation will be needed to advance a postmortem claim unless the Supreme Court reverses the common law basis for denying such an action.
In any event, the motions to strike are granted.
CORRADINO, J.