[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
The case arises out of an automobile accident in which the minor plaintiff was a passenger in a car owned by the defendant, Diane Morin, and operated by the defendant, Christian Morin. Their car contacted two others-one owned by the defendant, Marc Yantorno, and driven by the defendant. Nathan Yantorno, and the other owned and operated by Joseph Oliveira. The minor was injured and brought this action through her father.[1] The plaintiffs assert causes of action in negligence and recklessness. The father, as plaintiff in his own right, alleges, inter alia, a loss of filial consortium arising out of the injuries to his daughter. With regard to the recklessness counts, the plaintiffs, in their Prayer for Relief, seek the imposition of double or treble damages pursuant to C.G.S. § 14-295.[2]
All defendants have moved to strike the father's claims for loss of filial consortium. They state the claim is legally insufficient because Connecticut does not recognize that cause of action. Additionally, Marc Yantorno has moved to strike the recklessness claims and so much of the Prayer for Relief as requests double or treble damages. He claims he cannot be liable for exemplary damages because he neither operated a car nor was present at the time of the accident.
LEGAL STANDARD
CT Page 11450
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.' (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270 (1998). Practice Book § 10-39 allows for a claim for relief to be stricken only if the relief sought could not be legally awarded. Pamela B. v. Ment, 244 Conn. 296, 325 (1998). "A motion to strike is the proper procedural vehicle . . . to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Gradyv. Guerin, Superior Court, Judicial District of Stamford — Norwalk at Stamford, Docket No. 160239 (April 23, 1998, Lewis, J.); accord Shaham v. Wheeler, Superior Court, Judicial District of Danbury, 17 Conn. L. Rptr. 232, 233 (June 26, 1996, Moraghan, J.). The court is limited "to a consideration of the facts alleged in the complaint." Doe v. Marselle, 38 Conn. App. 360,364 (1995), rev'd on other grounds, 236 Conn. 845 (1996). For the purpose of a motion to strike, the moving party admits all facts well pleaded. RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 383 n. 2; see also Ferryman v. Groton, 212 Conn. 138, 142
(1989). The court must construe the facts in the complaint most favorably to the plaintiff. Faulkner v. United TechnologiesCorp., 240 Conn. 576. 580 (1997). "[W]here individual paragraphs standing alone do not purport to state a cause of action, a motion to strike cannot be used to attack the legal sufficiency of those paragraphs . . . A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated." (Internal quotation marks omitted.) Zimmerman v. Connecticut College, Superior Court, Judicial District of New London, Docket No. 544623 (July 2, 1998, Handy, J.); accord Bombard v. Industry Riggers, Superior Court, Judicial District of Waterbury, Docket No. 140181 (January 5, 1998, Pellegrino, J.); see also Zamstein v. Marvasti,240 Conn. 549, 553 (1997).
LOSS OF FILIAL CONSORTIUM
The father claims that, as a result of his daughter's injuries, he has been — and may continue to be — deprived of the minor's companionship, enjoyment, love, affection, and services.
Our Supreme Court has recognized a claim for loss of consortium in the context of a spousal relationship. See Hopsonv. St. Mary's Hospital, 176 Conn. 485, 487 (1979). However, "[n]o [supreme or] appellate court case has yet addressed squarely the CT Page 11451 issue of whether, under any circumstances, a cause of action for the loss of filial consortium lies." Mahoney v. Lensink,17 Conn. App. 130, 141 n. 7, rev'd on other grounds, 213 Conn. 548, 569
(1990). The Connecticut Supreme Court has declined to recognize a loss of parental consortium. In Mendillo v. Board of Education ofthe Town of East Haddam, 246 Conn. 456 (1998), the Court carefully considered the argument that that very Court, in PamelaB. v. Ment, 244 Conn. 296 (1998), had recently reaffirmed this state's policy to promote family welfare and, more specifically, had concluded the interest of children "in not being dislocated from the emotional attachments that derive from the intimacy of daily association, (sic) with the parent" had constitutional significance. Id. at 478. Recognizing the appeal of the various arguments urged in support of recognizing this cause of action, the Court painstakingly addressed each theory and policy urged yet concluded that, on balance, the wiser judicial policy was not to recognize the claim — largely because precedent strongly suggested the imposition of third party liability on a tortfeasor is an exception to the general rule of the scope of tort liability that required satisfaction of a special policy inquiry.Id. at 480. Mendillo focused on the differences between the spousal relationship and the parent-child relationship and expressed the need to be "very cautious about recognizing a new cause of action that would require us to impose arbitrary conditions on its scope" and determined it "should demand a very strong showing of public policy reasons before doing so." Id. at 487.
Ten years prior to Mendillo, our appellate court had considered a claim for loss of filial consortium in Mahoney v.Lensink, 17 Conn. App. 130 (1988). There, the parents sought recovery for the consortium of their dead son. While recognizing no appellate court case had yet addressed squarely the issue whether, under any circumstances, a cause of action for loss of filial consortium lies, the Court, in dicta, stated, "The right to consortium is said to arise out of the civil contract of marriage and as such does not extend to the parent-child relationship. " Id. at 141, citing Hopson, supra, at 487.
Connecticut superior courts have frequently considered this issue and with different results. In support of upholding the claim, see, e.g., Pacelli v. Dorr, Judicial District of New Haven, CV 96-0382547S (1998); Condon v. Guardiani, 1996 WL 240420 (1996); Davis v. Davis, 1996 WL 156011 (1996); Scalise v. BristolHospital, Judicial District of Hartford-New Britain at Hartford, CT Page 1145214 Conn. L. Rptr. 537, 8 CSCR 887 (1993); LeBlanc v. Vitam YouthTreatment Center, 19 Conn. L. Rptr. 485 (1997); Devalle v.Goggins, 1996 WL 614829 (1996); Condron v. Pollak, Judicial District of Stamford-Norwalk at Stamford, 10 Conn. L. Rptr. 411
(1993). In general, judges upholding this cause of action did so because they saw no reason to afford the protection to persons whose entitlement arose out of a marriage contract but deny the same protection to a parent-child relationship when our courts have said that relationship is constitutionally protected. The majority of superior court judges have, however, declined to recognize this claim. See, e.g., St. Armand v. Kromish, Judicial District of Ansonia — Milford at Milford, 20 Conn. L. Rptr. 556
(1997); Sousa v. Soares, Judicial District of New Haven at Waterbury, 20 Conn. L. Rptr. 318 (1997); Ligi v. Poveromo,
Judicial District of Danbury, 19 Conn. L. Rptr. 667 (1997);Flores v. Danbury Hospital, Judicial District of Danbury, 2 Conn. Ops. 283 n. 3 (1996) (extensive listing of 57 reported cases — 45 of which disallowed the claim and 12 of which permitted it).
The most frequently cited reason for disallowing the claim is dependence upon the language in Hopson, supra, which ties all of the intangible elements embraced by the term "consortium" to "the civil contract of marriage." Id. at 487. It is significant that, in rejecting the parental consortium claim, the Mendillo Court did so having had not only the opportunity to review all of the reported superior court cases but did so in the face of the Connecticut Trial Lawyers Association urging the creation of new law in an amicus curiae brief From Hopson to Mendillo, the history of our appellate courts' treatment of the consortium claim is demonstrably indicative of their commitment to vigilance not only with regard to broadening the spousal consortium claim but also to extending it to embrace the parent-child relationship.
The talisman of the Hopson decision was the injury to the martial unit — specifically, "the mental and emotional anguish caused by seeing a healthy, loving, companionable mate turn into a shell of a person . . ." 176 Conn. 493. "Moreover, an injury to one's spouse may turn a happily married man or woman into a lifelong nurse and deprive him or her of an opportunity of having children and of raising a family." Id. It limited the claim by barring it in those instances in which the injured spouse's claim is terminated by settlement or an adverse result on the merits. The right to assert the claim has been denied a spouse not married to the injured party at the time of the actionable CT Page 11453 conduct. See Gurliacci v. Mayer, 218 Conn. 531, 564 (1991). Nor can the claim be brought in an action brought under the defective highway statute. See Murray v. Frankel, 31 Conn. App. 752, 756
(1993); Amore v. Frankel, 29 Conn. App. 565 (1992), rev'd. on other grounds, 228 Conn. 358 (1994). Without discussion, Mahoney,
supra. limits consortium to a spousal injury and then only as to antemortem losses. 17 Conn. App. 141-42, citing Ladd v. DoualasTrucking Co., 203 Conn. 187 (1987). Our appellate courts, post Hopson, have restricted the consortium claim at every opportunity presented.
Justice Borden, writing for the Court in a 5-2 decision inMendillo, supra, concluded the imposition of third party liability on a tortfeasor was an exception to the general rule of the scope of a special policy inquiry. 246 Conn. 480. Having thoroughly analyzed all of the policy arguments there advanced, that Court concluded "the balance of interests lies in declining to recognize a cause of action for loss of parental consortium by a minor child." Id. at 495-96. It is clear the policy considerations which might persuade a court to extend the spousal consortium cause of action are more compelling in the context of a parental claim than, as here, in a claim for loss of filial consortium since children are dependent upon parents not merely for emotional sustenance but also for moral guidance, discipline, financial support, and protection. Stated another way, the child's claim embraces more of the elements traditionally considered as encompassed by the conceptualistic unity which is consortium.
The motion to strike all paragraphs asserting a loss of filial consortium in Counts 7-12 of the Amended Complaint is granted and the objection thereto is denied.
CLAIM FOR DOUBLE OR TREBLE DAMAGES AS AGAINST NON-OPERATOR
The claim of the defendant, Marc Yantorno, owner of the car operated by Nathan Yantorno, is that he is not liable for double or treble damages under C.G.S. § 14-295 with regard to the recklessness claims because he was not driving the car or present at the time of the accident. He argues that statute is in derogation of the common law and, because it creates liability where none previously existed, it should be strictly construed and not extended through construction. Ahern v. New Haven,190 Conn. 77, 82 (1983), citing Edmundson v. Rivera, 169 Conn. 630,633 (1975). Yantorno argues masters who themselves do not CT Page 11454 actively participate in the alleged wrongful conduct are not liable for exemplary damages.
Though not expressly stated in the Amended Complaint, the parties agree Marc Yantorno's liability is premised upon §§52-182 and 52-183. C.G.S. § 52-183 expressly provides that, in an action brought against the owner of a motor vehicle to recover damages for the negligent "or reckless" operation of that vehicle, the operator, if other than the owner of the car, shall be presumed to be the owner's agent and servant. The statute creates the presumption of agency and shifts to the defendant the burden of rebutting that presumption. If the words of a statute are clear, courts will not speculate as to the supposed intention of the legislature since the only relevant question is what intention is expressed by the words used. Ford Motor Credit Co.v. B.W. Beardsley, Inc., 208 Conn. 13, 18, citing Kyrtatas v.Stop Shop, Inc., 205 Conn. 694, 699 (1988). It is presumed the legislature intended the effect its action produces. Plourde v.Liburdi, 207 Conn. 412, 417 (1988). If an operator can be held liable under C.G.S. § 14-295 for double or treble damages where, as here, it is alleged that operator violated C.G.S. § 14-218(a) and that such speed was in reckless disregard of the conditions then and there existing, what. given the plain wording of §52-183, is its intended purpose if not to make the owner similarly liable for such damages?
The defendant's position is that exemplary damages cannot be imposed on a principal based only on allegations of respondeat superior and he relies upon Maisenbacker v. Society Concordia,71 Conn. 369 (1898). In Gionfriddo v. Avis Rent-A-Car System, Inc.,192 Conn. 280 (1984), the motor vehicle renters liability statute (C.G.S. § 14-154(a) was construed as an expression of legislative intent to extend the limitations of liability beyond the general principles of respondeat superior. Id. at 284. In fact, that Court noted both § 14-154a and the statute here in issue, §14-295, were lineal descendants of a 1797 statute which not only provided for the imposition of treble damages for injuries caused by one who violated certain rules of the road but which also made the owner liable if the driver were unable to pay. Construing that 1797 statute, our Supreme Court, in Levick v. Norton,51 Conn. 461 (1884), held the owner liable for treble damages. Id.
at 469. One hundred years later, our Supreme Court, construing a successor statute, stated the common law's reluctance to impose liability . . . for punitive damages was "not relevant" in light of an operative statute. Gionfriddo, supra, at 288. CT Page 11455
There is no reason not to conclude our highest court, in light of this history, would find in the language of C.G.S. § 15-183 a legislative intent to make a car owner liable for whatever damages the operator is found liable. Absent that construction, the "or reckless" language of the statute is rendered nugatory.
Defendant Marc Yantorno's motion to strike the recklessness claims as against him and that portion of the Prayer for Relief which seeks double or treble damages is denied and the objection thereto is sustained.
Sheedy, J.